STATE v. DOWNMAN.†

(Court of Civil Appeals of Texas. Jan. 18, 1911. Rehearing Denied Feb. 22, 1911.)

1. APPEAL AND ERROR (§ 1122*)—FINDINGS OF FACT—ADDITIONAL FINDINGS ON APPEAL.

Where there is no conflict in the evidence, it is proper for the appellate court to supplement the findings of fact as made by the trial court by the addition of facts appearing in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. § 1122.*]

2. TAXATION (§ 63*)—SUBJECTS OF TAXATION —MINERALS IN PLACE—SEVERANCE—"PROPERTY."

Ores and minerals in place are property, which by a proper conveyance may be severed from the land by the owner thereof, and when

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.
† Application for writ of error denied by Supreme Court.

so severed they become subject to taxation separate and apart from the land itself.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 147; Dec. Dig. § 63.*]

**3. Taxation (§ 63*)—Minerals—Separation from Land—Conveyance—Construction.**

Const. art. 14, § 7, provides that the state releases to the owners of the soil all mines or minerals, subject to taxation as other property. Article 8, § 1, makes all property not owned by a municipality taxable in proportion to its value, and Sayles' Ann. Civ. St. 1897, art. 5062, declares that real property for the purposes of taxation shall include lands and all rights and privileges belonging, or in any wise appertaining thereto, and all mines and minerals, in and under the same. The owners of land supposed to contain minerals, conveyed to defendant all metals, ores, granites, rocks, stones, and other minerals, metallic and nonmetallic, organic and inorganic, in place, or severed from the earth, which might be worked for profit by underground excavations or open workings, or both, and the by-products thereof, and all such ores and substances known to be or thereafter found to be in or upon the land described, together with the right to enter and search, dig and explore for such things and substances, with the right to appropriate so much of the surface of the land as might be required. *Held*, that such conveyances did not create a mere privilege or incorporeal right, but constituted a severance of the minerals and mineral substances contained in the land as between the landowner and the grantee, investing the latter with an interest in the land, which was subject to taxation apart from the land itself.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 147; Dec. Dig. § 63.*]

**4. Taxation (§ 593*) — Mineral Rights — Burden of Proof.**

Where a deed conveyed to the grantee a right to explore and take minerals from the land, and constituted a severance of the minerals from the ownership of the surface, it was not necessary for the state, in order to sustain a tax on the grantee's mineral interest, to show that the land described contained mineral ores or other valuable substances, but the burden was on the grantee resisting a tax so imposed to show that the land did not contain such minerals.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1215; Dec. Dig. § 593.*]

**5. Taxation (§ 446*) — Prima Facie Case — Introduction of Tax Roll.**

In an action by the state to recover taxes assessed on a mineral interest severed from the ownership of the surface, the introduction of the tax roll showing the assessment of the taxes established a prima facie case.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 784–786; Dec. Dig. § 446.*]

**6. Taxation (§ 593*)—Assessment—Mineral Interest.**

In an action to recover taxes assessed on the mineral interests in land severed from the ownership of the surface, evidence *held* insufficient to show that an assessment against the owners of the surface covered or was intended to include the value of the mineral interests.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1216; Dec. Dig. § 593.*]

**7. Taxation (§ 40*)—Assessment—Equality.**

That a tax assessor was directed to assess for taxes all mineral rights, by whomsoever held, within the county which had been severed by conveyance from the surface estate, did not direct the assessor to disregard in his assessment those holding lands in which mineral rights existed which had not been severed by conveyance to others, and hence did not render the assessment made on the severed mineral rights invalid because of nonuniformity and inequality, in that mineral rights nonsevered were not taxed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

**8. Taxation (§ 40*)—Mineral Rights—Inequality.**

An assessment of mineral rights, severed from the ownership of the surface by conveyance, was not rendered invalid for inequality because the assessor did not reduce the assessment of the land, as levied against the surface owners, thereby requiring the surface owners to pay the same amount of taxes on their land as other owners who had not conveyed the mineral rights in their respective tracts.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 40.*]

Appeal from District Court, Llano County; Clarence Martin, Judge.

Action by the State against R. H. Downman to recover taxes. Judgment for defendant, and the State appeals. Reversed and rendered.

Knight Stith, Slator & Oatman, Jewell P. Lightfoot, Atty. Gen., and R. E. Crawford, Asst. Atty. Gen., for the State. Gregory, Batts & Brooks, for appellee.

RICE, J. Prior to the 1st day of January, 1907, appellee Downman had purchased from various persons, as shown by their deeds in evidence, certain interests in and to the minerals, ores, rocks, etc., contained in the lands therein described, and popularly known as "mineral rights." The language employed in the habendum clauses of all said conveyances, except 6, was as follows: "Have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said R. H. Downman all metals, ores, granites, rocks, stones and other minerals, metallic and nonmetallic, organic and inorganic, in place or severed from the earth, which might or could be worked for profit by underground excavations or open workings, or both, and the by-products of and all such ores and substances, now known to be or hereafter found to be in or upon the hereinafter described lands, together with the right to enter upon the same and search, dig and explore for such things and substances; and the right to use and appropriate so much of the surface of said lands, as may be required," etc. And the other six conveyances conveyed, without any restriction, the mineral rights in the lands therein described. Appellee did not render for taxation for said year any interest whatever in said several tracts of land, and the taxes due thereon for said year became delinquent.

On the 12th of June next thereafter, the commissioners' court of Llano county passed and entered upon its minutes the following order, viz.: "In accordance with the advice and instructions of the Comptroller of the State of Texas, it is considered and ordered by the court that the assessor of taxes of Llano

county be and is hereby directed to assess for taxes all minerals and mineral rights in and upon and attaching to any and all land in Llano county, where it is found that said minerals and mineral rights are owned by a different person from the owner or owners of the surface estate in and to all such lands, and that said minerals and mineral rights so held and owned be assessed for taxes independent of the surface estate." By virtue of said order the assessor of taxes for said county assessed and listed for taxes against appellee the mineral rights so conveyed to him, as set forth in said conveyances; and thereafter presented said respective assessments to the commissioners' court for their approval, which were accordingly accepted and approved by said court; and the assessor was by them directed to place said assessments upon the delinquent tax roll, which was accordingly done by him. Thereafter, the collector of taxes for said county, in accordance with the provisions of the act of the Twenty-Fifth Legislature, passed at the regular session thereof (chapter 103, p. 132 et seq.), made on the 31st day of March, 1908, a triplicate list of said lands upon which the state and county taxes for the preceding year remained unpaid, charging against the same all taxes and penalties assessed against the owner thereof, and presented the same to the commissioners' court of said county for examination and correction; and said court, upon examination, approved the same, and the collector, in accordance with said act, filed one copy with the county clerk of said county, retained one copy thereof, and forwarded the other to the Comptroller with his annual settlement report, which said corrected list was advertised and published, as required by law, and this suit was thereafter. on the 6th day of March, 1909, duly filed in the district court of Llano county in the name of the state by the county attorney against appellee, to enforce the collection of said taxes, interest, penalty, and costs, as well as for foreclosure of plaintiff's lien on said minerals and mineral rights of appellee in and to each tract described in its petition.

After a general demurrer and general denial, appellee, as shown by appellant's brief, specially answered, denying that he had any interest in certain of the lands described in plaintiff's petition; admitting, however, as to certain others, that he held an undivided interest, and asserting that as to all the others he had only purchased the right, privilege, or license to enter thereon and to prospect for and develop, mine and sell as his own, such minerals and mineral substances as he might discover therein by prospecting, and which could be worked for profit by underground excavations or open workings or both. He likewise denied that there were any developed mines existing upon any of said tracts of land, either now or at the time of the execution of said conveyances; and

also denied that there were any minerals thereon capable of being developed or sold for a profit, and alleged that his purpose and intention in acquiring said license or privilege was merely to secure the right to prospect said land for such mineral substances as might be mined and sold for a profit; that he had not as yet prospected any of said lands, and had never examined many of said tracts; that the same were not different in character from the average lands of Llano county; that the lands in Llano and adjoining counties are supposed to contain valuable minerals, but no discoveries have as yet been made of mines or deposits capable of being worked at a profit. Defendant further alleged that prior to the tax assessment, made against his interest in said lands, if any, that the respective owners in fee of each of said tracts of land mentioned in plaintiff's petition, had rendered them for all purposes of state, county, and district taxes, which renditions had been accepted by the proper tax officers, and that all taxes due thereon had been charged on the tax rolls against said lands to the persons who so rendered them for taxation, and all taxes due thereon were subsequently paid by the owners; that after said lands had been rendered by their respective owners for the year 1907, and said renditions had been accepted and entered of record, and after said assessments had been reported by the assessor to the commissioners' court to be equalized, said court did, by order of July 12, 1907, as hereinbefore set out, direct the assessor to assess for taxes all minerals and mineral rights in and upon or attached to any and all lands of Llano county, where said minerals or mineral rights were owned by persons different from the owner of the surface estate; and that said minerals and mineral rights should be assessed for taxes independent of the surface estate; that the tax assessor, in pursuance of said order and upon no other authority, thereupon entered and made the tax assessments upon which plaintiff's suit was predicated; that in making said entries he wrote upon the assessment records nothing to indicate that taxes were intended to be thereby assessed against any other or different interest in said land for the year 1907 than the entire fee simple and absolute title in same; that having entered said rendition, the tax assessor thereupon reported the same to the commissioners' court; that said court, without hearing any evidence to show that said lands contained any minerals, or that the values were in any respect enhanced by the presence of minerals, and without any such evidence having been heard by the assessor, approved said assessments, and ordered same to be entered on the tax rolls. That in pursuance of said order, said assessments were entered upon the unrendered rolls of said county; that at the head of said assessments were written the words "mineral rights only," and that the roll made up in

the manner alleged constituted the sole basis for the claims against defendant in the plaintiff's petition; that in assessing said minerals and mineral rights in the lands mentioned in plaintiff's petition, no reduction in the valuation at which said lands had been assessed against the holders or owners of the fee-simple title was made; that in assessing all other lands of the county for said year, in respect to which no mineral rights had been granted by the owners of the fee-simple title, the officers valued the same at the same figures as the lands mentioned in the plaintiff's petition; that said other lands are of the same character as those mentioned in said petition; that the same reasons exist for supposing that said other lands contained minerals as existed for supposing that the lands mentioned in plaintiff's petition contained minerals, and that by reason of such system of valuation the lands on which mineral privileges are retained by the owners of the fee were valued at a different and lower rate, for the purposes of taxation, than the other and similar lands in which the mineral privileges had been conveyed to others other than the owners of the fee; that for said reasons said tax assessments of said county for said year are unequal, not uniform, arbitrarily and systematically discriminatory against the defendant, and all other persons who have mineral privileges in lands of others in said county. The case was tried by the court without a jury, and judgment rendered in behalf of the defendant, from which this appeal is taken.

It was submitted to the court upon an agreed statement. There is also in the record a statement of facts, and, at the instance of appellant, the court filed its findings of fact and conclusions of law, wherein, after finding that defendant owned no interest whatever in certain of said tracts on January 1, 1907, by reason of previous sales, and for other reasons, and as to certain other tracts he had paid the taxes assessed against them, found that, with the above exceptions said Downman was on January 1, 1907, the owner of such interest, if any, in or with respect to each of the tracts of land described in plaintiff's petition as were conveyed to him by the instruments hereinbefore mentioned, and was not the owner of any other interest in or with respect to said lands or any part or parts thereof; that all of said conveyances were exactly similar in form and legal effect, only differing as to the names of the respective grantors, the consideration and the description of the lands conveyed; that each of the grantors in all of said instruments voluntarily rendered each of the tracts of land mentioned in plaintiff's petition for state and county taxes for the year 1907, in the manner hereinafter specified. All of said renditions were made by said grantors prior to the making of any of the tax assessments against the defendant on which the taxes claimed in this suit are predicated. Said renditions by said grantors were accepted by the tax assessor in the form and manner that they were made, they were carried forward into the tax rolls as made, and all taxes predicated thereon have been paid. All said renditions made by said grantors, and the tax assessments in pursuance thereof are in similar form, and are similar in all respects to the rendition and assessment of the lands of A. J. Bauman, one of said grantors, which rendition and assessments are as follows:

"Inventory of property owned by A. J. Bauman and rendered for assessment of taxes for the year 1907 by owner to J. A. Cone, assessor of Llano county, state taxes. Assessment of 'timber only' must be placed on separate sheet. Chapter 52, Acts of Twenty-Ninth Legislature. Real estate.

| Abstract No. | Cert. or Scrip No. | Survey No. | Original Grantee. | Acres Rendered. | Value. |
|---|---|---|---|---|---|
| 249 | 167 | 184 | Fisher & Miller | 288 | 1650 |
| 250 | 167 | 132 | Fisher & Miller | 308 | 1030 |
| 815 | 296 | 92 | A. Vogt | 320 | 960 |
| 1122 | | 24 | R. Bauman, R. M. | 160 | 320 |
| 1487 | | 888 | M. L. Bauman, on mountain | 96⅔ | 200 |
| 1424 | | 17 | M. L. Bauman | 160 | 320 |
| 1423 | | 16 | H. C. Bauman, Taylor Holler | 160 | 320 |
| 854 | 507 | 51 | F. W. Wrede | 160 | 320 |
| 200 | 899 | 98 | L. Ethrop | 320 | 960 |
| 199 | 899 | 97 | L. Ethrop | 320 | 960 |
| 1026 | 1328 | 3 | E. & L. R. R. Co., | 640 | 1920 |
| 1460 | | | W. D. Wright | 35 | 105 |
| 260 | 502 | 85 | C. Fix | 129 | 385 |
| 261 | 502 | 86 | C. Fix | 129 | 385 |
| 769 | 64 | 1 | S. F. I. W. Co. | 160 | 480 |
| 578 | | 16 | D. F. Owens, | 160 | 320 |
| 693 | 297 | 93 | A. Strauss | 320 | 960 |
| 727 | 993 | 53 | F. Shenk | 79¾ | 240 |
| 309 | 4 | 131 | Gerring Co. | 85 | 240" |

And each of said grantors in rendering said lands for taxation listed same as "real estate" and did not employ any language indicating an intention to exclude or except from their rendition as made any mineral rights or other interest whatever in said lands. They each in making renditions wrote therein the name of the owner of the land, the abstract number, the number of the survey, the name of the original grantee, the number of the certificate, the number of acres and the value of the land, in the manner and form prescribed by statute for the rendition of real estate. Said renditions as made were accepted by the tax assessor, and were approved by the Board of Equalization. The tax rolls, as made up and predicated upon said renditions and assessments are in the form prescribed by the statute for making up such rolls, showing taxes due on real estate, where the same has been rendered for taxation by the owners. and do not in any way or by any language indicate an intention to exclude from the taxes shown to be due any interest in the lands

listed thereon. *At the same time of approval of renditions of the grantors of R. H. Downman there were submitted to the commissioners' court approving the same the tax assessments made as hereinafter stated by the tax assessor of Llano county against R. H. Downman contained in the list hereinafter referred to and on which this suit for taxes is predicated, which said tax assessments against said R. H. Downman were at the same time and cotemporaneously with the assessments against said grantors approved by said commissioners' court.*

On July 12, 1907 (after the tax renditions by said grantors had been made and accepted by the tax assessor, as above stated), the commissioners' court of Llano county passed and had entered on its minutes an order, in the following terms. (Here follows the same order of the commissioners' court as above set out.) The tax assessor of Llano county made the tax assessments on which this suit is predicated in pursuance of said order of the commissioners' court. In making said assessments the tax assessor heard no evidence and examined no lands to ascertain whether they in fact contained minerals or not, but merely examined the deed records of the county, and made therefrom a list of all lands in the county in which the owners had executed and recorded instruments purporting to grant to others mineral rights or the right to search for minerals in their lands. The list so made contained no mention of any tracts of land in which the entire fee-simple titles were held by the same person or persons or in which mineral rights had not been conveyed by the owners of the fee to third persons. At the head of the list so made the tax assessor wrote the words "mineral rights only." Opposite each tract of land shown on the list he wrote the assessed value of 50 cents per acre, the name of the owner of the mineral rights, and the description of the land by abstract number, survey number, original grantee, and so on, as shown by the statement of facts. The list so made was submitted to the board of equalization as a roll of unrendered property, was by the board approved as made, without any evidence having been heard, and now forms the basis of the claim against the defendant for taxes. *Said list was approved by the board cotemporaneously with its approval of the rolls showing the assessment made against the grantors of defendant, as hereinbefore specified.* In assessing the lands mentioned in plaintiff's petition for taxation against the grantors hereinabove mentioned for the year 1907, and in assessing for taxation against the owners of the fee-simple titles the other lands in the county in which mineral rights had been conveyed to third persons, neither the tax assessor nor the board of equalization made any reduction in the valuation of same on account of the fact that mineral rights

therein had been conveyed to third persons; but said lands were, in assessing the taxes of the owners of the fee-simple titles, valued exactly as other lands in the county of similar quality were valued in assessing taxes against those landowners who had not conveyed to third persons any mineral or other rights in their lands. In other words, all lands in the county in which the ownership of the entire fee-simple title had not been divided by conveyance of mineral rights to third persons were assessed for taxation at values corresponding exactly to the value placed on the lands mentioned in plaintiff's petition in assessing same for taxation against the grantors of defendant. No developed mines exist or existed on January 1, 1907, on any of the lands mentioned in plaintiff's petition, and no minerals of any character capable of being worked for profit, or having a value, are shown to have ever existed on any of said lands. Said lands do not differ, so far as mineral indications are concerned, from the lands of the county in general in which mineral rights have been conveyed to third persons by the owners of the fee-simple title. Defendant is and was on January 1, 1907, a resident and citizen of the parish of Orleans, state of Louisiana.

The commissioners' court of Llano county at its regular term in February, 1907, by an order of said court made and entered in the minutes of said court, levied a county general and special tax on all property in the county subject to taxation for said year, and said order was made and entered in the manner and form prescribed by statute. The rates of taxation so levied, and the various purposes for which they were levied will be found in the statement of facts, and as there contained are hereby made a part of these findings. The taxes here sued for were assessed in the manner shown by the inventory assessment sheet or list which is copied in the statement of facts, were thereafter carried to and placed upon the tax rolls for the year 1907 of said county, and said tax rolls for said year were made up and certified to by the proper officer; all of said proceedings having been done in the form and manner prescribed by statute. The delinquent list for said county for taxes unpaid are delinquent on March 31, 1908, for the year 1907, in which appear the taxes sued for herein, were prepared in triplicate, showing the penalties assessed against same, including penalties sued for herein, by the tax collector of Llano county, and presented by him to the commissioners' court of said county for examination and correction of errors that may appear therein; said delinquent tax list showing the taxes and penalties sued for herein, was thereafter examined and approved by the aforesaid commissioners' court and the three copies thereof disposed of as the law directs, and said delinquent tax list was thereafter duly pub-

lished for the time required by law in the Llano News, a newspaper published in Llano county, Tex., all of said proceedings having been done and performed in the manner and form prescribed by statute.

### Conclusions of Law.

1. The written instruments of the stereotyped form above mentioned conveyed to the defendant only such of the minerals and mineral substances located on the lands mentioned in plaintiff's petition as might be ascertained to exist and to be capable of being worked for profit by underground excavations or open workings, or both. There is no evidence that there exists on the lands any physical property to which title has vested in defendant by virtue of the grant contained in the instrument, and as it is agreed that the defendant has no interest in the lands, except such interest (if any) as vested in him by virtue of said instruments, I conclude that he did not own on January 1, 1907, any interest in said lands, except the incorporeal license or privilege to prospect and develop said lands, and to thereby acquire title to such (if any) of the minerals or mineral substances as might be discovered thereon or therein of the character, quality, and quantity specified in the instruments. I further conclude that the tax assessments on which the suit is predicated do not purport to assess for taxation the incorporeal licenses or privileges above mentioned, and that same could not lawfully be assessed against him in Llano county.

2. As an additional reason why the plaintiff should not recover the taxes claimed under said stereotyped conveyances I conclude that under the Constitution and laws of this state, before defendant could be compelled to pay taxes in Llano county on account of any interest, right, or privilege vested in him by the terms of these deeds, it would devolve upon the plaintiff to establish by evidence that there was mineral or mineral substances on the lands embraced in these deeds that could be worked at a profit by underground excavations or open workings or both, and that said facts are not established by the evidence.

3. I conclude that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that there existed on January 1, 1907, some mineral or mineral substances upon those lands mentioned in the plaintiff's petition in which the defendant owns unqualified mineral rights by virtue of the six nonstereotyped instruments above mentioned, and that plaintiff is not entitled to recover of defendant the taxes claimed against those lands, because the preponderance of the evidence does not show that any minerals or mineral substances were located on or contained in said lands, or that said instruments vested in defendant the title to any physical property.

4. I conclude that the tax renditions for 1907 made by the grantors of the defendant, as above stated, and the tax assessments predicated thereon, embraced all interest in the lands mentioned in plaintiff's petition, including *"all mines, minerals, quarries, and fossils in or under same";* and that all taxes due the state and county on said lands for the year 1907 have been paid, including all taxes due on the minerals in or on said lands. I further conclude that when the state and county once assesses the entire interest in property for a given year and collects the taxes thereon, they cannot thereafter reassess the same property or reassess any interest therein for the same year, in the name of another, and cannot collect taxes thereon for said year, even though the second assessment be against the real owner of the interest assessed.

The above conclusions make it necessary to render a judgment for the defendant, and I therefore find it unnecessary to reach any conclusion on the question of whether or not the facts disclosed by the record and above stated in my findings of fact, render the tax assessments against the defendant void because of inequality and systematic discrimination in the plan by which they were made. To which conclusions of fact and law as announced by the court in rendering the judgment in this cause, the plaintiff then and there in open court excepted, and now assigns error as set forth by the first and second assignments.

By the first assignment it is urged that the court erred in its first conclusion of law in holding that the stereotyped deeds introduced in evidence by the plaintiff did not convey to the defendant R. H. Downman any interest or right in land taxable under the Constitution and laws of the state of Texas; and by its second it is urged that the court erred in its second conclusion of law, in holding that said stereotyped deeds did not convey any interest to said R. H. Downman taxable under the Constitution and laws of the state of Texas until the plaintiff had established by evidence that there were minerals or mineral substances on the lands embraced in said deeds that could be worked at a profit by underground excavations or open workings, or both, in that the grantors of said defendant Downman had, for a valuable consideration, to wit, $2 per acre, conveyed to said Downman by said instruments certain rights, titles, and interest in said lands, and whether it was of much or of little value, it did not place the burden upon the state to develop and establish the value of the rights conveyed to said Downman in order to make the same taxable. And by its proposition thereunder the state asserts that the instruments in stereotyped form conveyed an interest in the lands described in said instruments, taxable under the laws of the state of Texas, whether or not it was known

that minerals capable of being worked or mined at a profit existed on said lands at the time of their execution.

As there is no conflict, in the evidence, we deem it not improper to supplement the findings of fact as made by the court with certain other matters appearing in the evidence; and will add that there are no facts in the record showing that minerals did or did not exist on the lands mentioned in plaintiff's petition. The evidence in this respect is that no mines exist on the lands, and that it is unknown whether minerals, capable of being worked at a profit, existed on said lands. It appears, however, from the statement of facts, that the defendant paid for the rights he acquired from $1.50 to $2 per acre. And it further appears that there are showings of mineralization, floats and iron stains on said lands, and that the defendant was induced to purchase the same by reason of this fact, as well as the generally reputed fact that rich mineral ores exist on the lands in said section.

It will therefore be seen that the questions for our determination, as involved in these assignments are, first, whether or not the court was correct in its conclusion, in holding that said deeds to Downman did not convey to defendant any interest or right in the land subject to be taxed under the Constitution and laws of this state, but only a license or right to prospect for minerals therein, which franchise or right is not taxable in this state; and, second, if such deeds did convey an interest in land taxable under the laws of this state, then whether or not the burden was upon the plaintiff to show that such mineral substances as named in said conveyances capable of being worked for a profit existed upon said lands before the same became subject to taxation.

We think it is clear under the authorities that ores and minerals contained in land are property, and that the same, by proper conveyance, can be severed from the land by the owner thereof, and when so severed the same become the subject of taxation, separate and apart from the land itself. One party may own the surface estate and another the minerals or mineral rights in said land; and, when so owned separately, each are subject to be taxed for their respective properties in the land. Of course, until so severed, it is a part of the land, and is subject to taxation as such in the hands of the owner. It is said in White on Mines and Mining Remedies, pp. 541, 545, § 410, that "the duty of paying taxes being primarily upon the owner of the land, so long as the ownership of the ore is the same as that of the surface, the surface owner should pay taxes on the ore in place as a part and parcel of his land; but when there is a severance of the titles, and the ownership of the ore passes to other than the surface owner, he should bear the burden of his own property, the same as the surface owner

should; and the surface and the mineral in place should be accordingly assessed to the respective owners.

Our own Constitution (article 14, § 7) provides that the state of Texas releases to the owner or owners of the soil all mines or mineral that may be on the same, subject to taxation as other property. Article 8, § 1, of the Constitution, declares that all property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which may be ascertained as provided by law, etc. Section 11 of said article provides that all such property shall be assessed for taxation and the taxes paid in the county where situated. Section 15 provides that the annual assessment made upon landed property shall be a special lien thereon, and all property, both real and personal, belonging to any delinquent taxpayer, shall be liable to seizure and sale for the payment of all taxes and penalties due by such delinquent.

Article 5062, Sayles' Ann. Civ. St. 1897, provides that real property for the purposes of taxation shall be construed to include land itself, whether laid out in town lots or otherwise; and all the buildings, structures and improvements of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries, and fossils in and under the same.

Now did the deeds in evidence convey to Downman an interest in land? If so, such interest was taxable under the laws of this state in the county where the lands were situated. It seems to us that the conclusion is irresistible that they did, and that no mere privilege or incorporeal right was conveyed thereby, notwithstanding the restrictions mentioned in the stereotyped conveyances first above referred to. It seems the parties themselves evidently considered the mineral rights so conveyed as real estate, since the instruments are in form similar to ordinary conveyances of real estate, containing all the requisites of deeds of conveyance. They were acknowledged as required for such conveyances and recorded in the deed records of the county where such mineral rights were located. The grantee considered the interest so conveyed valuable, paying therefor a consideration of from $1.50 to $2 per acre, as recited in the deeds, which is supported by the testimony.

In discussing the case of In re Major, 134 Ill. 19, 24 N. E. 973, whether or not mineral interest in land which had been reserved from the conveyance of said land to other parties was subject to taxation against the grantor, who had reserved such interest, the court in its opinion said: "It is, however, said that the question is not as to the right to assess and tax coal in land which is reserved and held separate from the fee of the surface, but the question is as to the existence of the coal assessed, and it is urged

that there is no coal mine open or in operation upon said land, and no evidence that coal exists thereunder, and therefore the assessor was not authorized to make the assessment. It is alleged in the petition and is otherwise manifest that whatever there was of coals or minerals underlying said land was reserved and continued to be the property of appellant, with the right to mine the same. If it was property, it was the duty of the assessor to return an assessment thereof. If valued too high, another mode is pointed out for redress, to which appellant might have resorted. The ownership of the coal was severed from the ownership of the soil, and the fee of the coal was property and as such was liable for its just portion of taxation."

In discussing the taxability of mineral rights, the court in Sholl et al. v. People, 194 Ill. 24, 61 N. E. 1122, said: "The estate in minerals is denominated a 'mining right' in sections 6 and 7 of said chapter of the statute entitled 'Mines' before referred to [Starr & C. Ann. St. 1896, c. 94] and if the estate has been created by the reservation in a deed conveying the land to another, of the right to retain and take the mineral, it would not inappropriately be called a 'mining right reservation.' If the interest of the objectors was not that of a mining right, but a mere easement, it was in their power to prove such to be the state of the case, and the burden rested upon them to do so."

In the case of Consolidated Coal Co. of St. Louis v. Baker, 135 Ill. 545, 26 N. E. 651, 12 L. R. A. 247, certain tracts of land had been assessed for taxes against certain owners thereof. The tax assessor had also returned an assessment for coal under the same lands against the Consolidated Coal Company. The Coal Company objected to the assessment against it on the ground, first, the coal was not assessable separately from the land in which it lies; and, second, the taxes have been paid on the land in which the coal lies, and that land was assessed without excepting the coal. The opinion says: "It is insisted, first, that the burthen was upon the collector to show that the owners of the land had in some way sold and conveyed the coal underlying their lands respectively; and having failed to do so, the objections should have been sustained. We are unable to concur in this view. The assessment was introduced in evidence and the assessor called as a witness, who testified that in making the assessment he decreased the value placed upon the land by the amount he placed upon the coal, and that 'the superintendent of objector's mines where the coal is situated, told me the number of acres in each tract yet unmined, and I followed his statement' in making the assessment. The collector's return of the delinquent list, with statutory notice and proof of publication, prima facie entitles the collector to judgment for the tax returned as

delinquent. The presumption is that the assessor and other officers charged with the levy and collection of taxes have done their duty, and have not made an illegal assessment or returned an illegal tax delinquent. We have repeatedly held that the burthen of showing such matters as would avoid the tax or establish its illegality is upon the person objecting thereto (citing authorities). Where the return of the collector is in conformity with the statute, the presumption of the regularity of the assessment and validity of the tax is indulged until facts are shown that impeach their legality. Here the tax was returned delinquent against the coal underlying the several tracts named, and the presumption must obtain that it was properly so assessed and returned, until the contrary is made to appear. It is insisted, however, that under the revenue laws of this state coal and other substances, which in their natural state and situs are part of the realty cannot be so severed from the ownership of the land or the land itself as to become separately taxable, and that therefore the assessment made upon the coal underlying these lands is void; that the land having been assessed to the several owners thereof, and the taxes thereon duly paid, there was no further liability because of any substance upon or forming part of the land. The fourth section of the revenue act (Rev. St. c. 120) provides: 'Real property shall be valued as follows: First, each tract or lot of real property shall be valued at its fair cash value estimated at the price it would bring at a fair voluntary sale; second, taxable leasehold estates shall be valued at such a price as they would bring at fair voluntary sale for cash. * * * Fourth, in valuing any real property on which there is coal or other mine or stone or other quarry, the same shall be valued at such a price as such property, including the mine or quarry, would sell at a fair voluntary sale for cash.' And it is insisted, therefore, for the purposes of taxation, that there can be no severance of the mine from the land, but, as before said, the value of the mine must be included in the valuation of the land, however separated by contract or severally held and owned. Section 1 of article 9 of the Constitution of this state provides that 'the General Assembly shall provide such revenue as may be needed by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or its property.' Construing the provisions of the revenue law quoted in the light of the provision of the Constitution, it would seem that the question was whether appellant had, or could have held, by deed of conveyance or lease, such an interest in the coal underlying these lands as would be property and assessable as land. By the statute of New York, the term 'land,' as used in the law relating to property liable to taxation,

etc., is by statute to be construed 'to include the land itself, including land and water, all buildings and other articles erected upon or affixed to the soil, all trees and underwood growing thereon, and all mines, minerals, quarries, and fossils in and under the same.' In Smith v. Mayor of New York, 68 N. Y. 552, it was held that, under the definition of 'land' thus given, 'one may be taxed as owner of the fee of the land, and another for the trees, buildings, and other structures thereon, and the minerals and quarries therein'; and it was there held that a pier built upon the land of the city by the appellant Smith was real estate, within the meaning of the statute, and taxable as such, although built upon the land of another. In People v. Cassidy, 46 N. Y. 46, the question was as to the right to tax the track of a street railway placed in the streets of a city as land, and it was held to be land within the statute. The position was there taken that it was not real estate, but the court said: 'The statute means, for its purpose, to make two general divisions of property; one all lands, another all personal property, and then, to be more definite, it declares that by "land" is meant the earth itself, and also all buildings and other articles erected upon or affixed to the same. We do not think that, when buildings or other articles are erected upon or affixed to the earth, they are not, in view of the statute, land, unless held and owned in connection with the ownership of the fee in the soil. We are of opinion that the statute means that such an interest in real estate as will protect the erection or affixing thereon and the possession of the fixtures, will bring such buildings and fixtures within the term "lands," and hold them to assessment as the land of whomsoever has the interest in the real estate and owns and possesses the buildings and fixtures.' See People ex rel. v. Commissioners of Taxes, 10 Hun (N. Y.) 207, and People ex rel. v. Board of Assessors, 93 N. Y. 308, wherein it was held in the last case that the parties might regulate their several interests in real estate by contract, so that one might own the buildings and another the fee, holding that the buildings in such case were properly assessed as land. The court further adds: 'We do not deem it necessary to extend this opinion by citation from other courts. Our statute provides that in valuing lands on which there is coal or other mine, or stone or other quarry, the price or value of such mine or quarry shall be included. This necessarily requires a valuation of the mine or quarry, and, if there is no division of ownership, it will all properly be assessed with the fee. It is, however, a matter of common knowledge that the coal underlying lands is conveyed by deed or other instrument, so as to vest the coal, with right of mining the same, in another than the owner of the fee. Ordinarily, perhaps, there is an

absolute conveyance of the coal or other mineral, with a lease of sufficient of the surface for shafts, etc., at which to deliver the coal from the mine, or it may be mined by entries from other adjacent lands, without entering upon the surface of the particular tract of land upon which the coal is situated. The grant is more than a mere license to enter and mine the coal; it is a conveyance of the coal itself, as it lies impacted between the stratas of stone, slate, or clay in the state of nature. The title passes to it as property. It is true its value must be added to the valuation of the land, but it by no means follows that it must be assessed with it. The parties have created two distinct properties in the same land; one holding one property right in the land, and the other a distinctly separate property interest therein. The statute, as before said, when read in view of the constitutional provision quoted, would require the assessment to be made in the names of the persons or corporations holding such property interest in the land. True, the total assessment must equal the value of the land augmented by the value of the coal or mine, but the assessment of each should be made separately according to the several holdings to the end that each "shall pay a tax in proportion to the value of his, her, or its property." The coal thus reserved by the grantor of the land is not personal property, and cannot be until it is severed. By the conveyance of it, an interest in the land itself passes to the grantee— the ownership of portions of the constituents of the land—and falls within the designation of real estate.' "

In Benavides v. Hunt, 79 Tex. 389, 15 S. W. 396, it was held that the contract granting to the lessee the right to mine coal or other minerals on land for a term of years, conveys to him an interest in the land described, and that therefore, the four-year statute of limitation, which was pleaded, did not apply. See, also, Stuart v. Commonwealth, 94 Ky. 595, 23 S. W. 367; Sanderson v. Scranton, 105 Pa. 469; Kincaid v. McGowan, 88 Ky. 91, 4 S. W. 802, 13 L. R. A. 289; Wolfe County v. Beckett, 127 Ky. 252, 105 S. W. 447, 17 L. R. A. (N. S.) 688.

From the foregoing authorities we hold that the deeds to Downman conveyed to him an interest in lands, such as is taxable under the laws of this state. We further believe, and therefore hold, that it was unnecessary on the part of the state, as claimed by appellee, to show that the lands described in the deeds of conveyance to Downman contained any mineral ores or other valuable substances, because we think the burthen was on the appellee to show that they did not contain such minerals. The state by the introduction of the tax rolls in evidence made a prima facie case, the onus of rebutting which was upon the appellee. We therefore sustain both of said assignments, and

hold that the court erred in the conclusions of law therein complained of.

What we have said under the previous assignments we think disposes of the question raised by the third assignment, for which reason it will be unnecessary to discuss same.

By its fourth assignment appellant insists that the court erred in its fourth conclusion of law in holding that the tax rendition for 1907 made by the grantors of appellee Downman embraced all interests in the land mentioned in plaintiff's petition, when in truth and in fact said renditions at the time made, while not in the manner and form as made, expressly excluding from said rendition the idea that all interests were rendered, were never approved by the commissioners' court as a full rendition of all interest in the lands, but, on the contrary, said commissioners' court ordered and directed the tax assessor of Llano county to render and assess separate and apart for taxes the said estate and rights that had been by said grantors conveyed to defendant Downman, and said renditions as made by said grantors were not approved until the said assessments had been made by the assessor against said Downman, at which time the said commissioners' court of Llano county approved the renditions as made by the assessor of Llano county of the estate and rights of R. H. Downman as conveyed to him by the stereotyped and six other deeds introduced in evidence, and because it held that, inasmuch as the grantors of R. H. Downman had rendered the land as above specified, that the commissioners' court had no authority before the date of approving the said renditions of said grantors to instruct the tax assessor to assess separately the estate and rights in the lands conveyed by said grantors to R. H. Downman and thereafter to approve both assessments and require the payment of taxes by the grantors of R. H. Downman of the estate they owned in said land, and also the payment by R. H. Downman of the taxes assessed against him for the estate and rights he owned in the lands. And by its proposition thereunder, appellant urges that the fact that each of the grantors of the interests conveyed to appellee in the tracts of land mentioned in plaintiff's petition rendered said lands for taxation, listing same as real estate and did not employ any language indicating an intention to exclude or except from their valuation as made any mineral rights or other interest whatever in said lands, but said renditions were made as of the whole interests in said lands in the manner and form prescribed by statute for the rendition of real estate, and were accepted by the tax assessor and approved by the board of equalization, and the tax rolls made up therefrom and predicated on said renditions and assessments in the form prescribed by statute for making up rolls showing taxes due on real estate, where the same has been rendered for taxation by the owners, did not render invalid the subsequent assessment of the mineral rights owned by appellee in said tracts of land.

It will be recalled that the fourth conclusion of law held that the tax rendition for 1907 made by the grantors of Downman and the tax assessments predicated thereon embraced all interest in the lands mentioned in plaintiff's petition, inclusive of the mines, mineral, quarries, and fossils in or under the same, and that since all taxes due the state and county on said lands for 1907 had been paid, therefore the state was precluded from reassessing the same property or any interest therein for the same year in the name of another, and again collecting taxes for said year, notwithstanding the second assessment might be against the real owner of the interest assessed. This conclusion was based upon the fourth finding of fact above set out. Appellee by his first counter proposition contends that as the undisputed evidence in the case sustains the finding of the trial court that all taxes due for the year 1907 on each of the tracts of land mentioned in plaintiff's petition had been paid in full prior to the trial of this case, that the trial court, for this reason, properly rendered judgment for appellee, regardless of any other defense presented, citing in support of his contention articles 5062 and 5076, Rev. St. 1895; also State v. A. & N. W. R. R. Co., 94 Tex. 530, 62 S. W. 1050; Commonwealth v. Chicago R. R. Co., 105 S. W. 127, 32 Ky. Law Rep. 10; Commonwealth v. Ingalls, 121 Ky. 194, 89 S. W. 157; Spalding v. O'Callaghan (Ky.) 76 S. W. 189; Commonwealth v. Gaines & Co., 80 Ky. 489; Commonwealth v. Ches. & Ohio R. R. (Ky.) 91 S. W. 672.

The authorities cited by appellee sustain abstractly the contention as made by him, and if his premise is correct, then there can be no question that the court was correct in the conclusions reached; because if, in fact, the grantors of Downman had by their voluntary assessment, which had been accepted and acted upon by the authorities, rendered for taxation not only their interest in the real estate mentioned in said conveyances, but that the same embraced the mineral rights of Downman as well, and the state had collected from said grantors the whole amount of taxes so due, then and in that event the state, through its officers, could not reassess and collect an additional tax from Downman. But was this done? Appellee contends that it was, by reason of the fact that in the renditions of said real estate as given in by the grantors of Downman and accepted by the assessor no mention was made in said assessments of the fact that they had previously conveyed their interest in the mineral rights underlying said lands, and there was nothing to indicate any such fact in any of said assessments. While this is true, and it would have been better for said grantors to have mentioned in said assessments that they only rendered the sur-

face estate in said lands, yet we find that when the commissioners' court met as a board of equalization, and these assessments of Downman's grantors were presented for their consideration, they, with knowledge of the fact that the mineral rights had been conveyed by said grantors, deferred action thereon, and directed the assessor, by an order spread upon their minutes, as hereinbefore set out, to assess for taxation all mineral rights in lands in said county where it appeared that the owners of the surface estate had conveyed the mineral rights therein. The record shows that the assessor literally followed the direction of the commissioners' court in this respect, and assessed as against Downman the mineral rights so conveyed to him by each of said grantors, which assessments were at the same time together with the assessments of the lands rendered by said grantors, submitted to said court for their consideration, and at the same time said court approved the assessments of said grantors as well as the assessments against Downman for his mineral rights in the tracts so conveyed to him by said grantors. This being true, it clearly appears that the commissioners' court did not consider the rendition of Downman's grantors as embracing the mineral rights in said lands; but, on the contrary, specially directed that the same should be assessed separate and apart from the interest of the grantors therein, and the same was so assessed, and the assessments so separately made were approved by them. For which reason, it seems to us that the rule contended for by appellee does not apply, but, on the contrary the contention of appellant is correct and should be sustained.

There was no finding in its conclusions of law by the trial court relative to whether or not the tax assessments against the defendant were void on the ground of inequality and systematic discrimination, the court holding that since it made a general finding in favor of the defendant, it was unnecessary to pass upon this question; and while appellant has presented no assignment discussing this question, yet since the judgment of the court, if correct, could be sustained upon the theory if warranted by the facts which is not admitted that said tax was not uniform and equal but systematically discriminatory against the appellee, notwithstanding the fact that the court did not base its judgment upon this feature of the case, and especially in view of the fact that appellee in his brief presents this phase of the case and urges that the judgment of the court is correct, since its findings of fact show, as he contends, that the assessments in question were void because it appeared from said finding that appellee's mineral rights were assessed for taxes, whereas the mineral rights belonging to other persons in said county, who owned both the surface estate and the mineral rights were not so assessed for taxes, we

therefore think it appropriate to present our views upon this question. Appellee cites the following authorities in support of his contention: Section 1, art. 8, Tex. Const.; section 1, Const. U. S. Amend. 14; Lively v. M., K. & T. Ry. Co., 102 Tex. 558, 120 S. W. 852; M., K. & T. Ry. Co. v. Shannon et al., 100 Tex. 396, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Cummings v. Merchants', etc., Bank, 101 U. S. 153, 25 L. Ed. 903; Raymond v. Chicago U. T. Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78; Taylor v. L. & N. Ry. Co., 88 Fed. 350, 31 C. C. A. 537; Bank v. Hines, 3 Ohio St. 15; Ex parte Ft. Smith, etc., Bridge Co., 62 Ark. 461, 36 S. W. 1060; Chicago, B. & Q. Ry. Co. v. Board, etc., 54 Kan. 781, 39 Pac. 1039; Andrews v. King County, 1 Wash. St. 46, 23 Pac. 409, 22 Am. St. Rep. 136.

The order of the commissioners' court above recited, under which the assessments against appellee were made, as well as the facts in evidence, we think, fail to sustain appellee's contention in this respect. It is true that the tax assessor thereunder was directed to assess for taxes all mineral rights in said county by whomsoever held, where it appeared that the same had been severed by conveyance from the surface estate; still, this is not equivalent to a direction to the assessor to disregard in his assessment those holding lands in which mineral rights existed but had not been severed by conveyance to others. And it would seem to us that before the contention made by appellee could be upheld that it ought to be made to appear that the tax assessor of Llano county and the tax authorities thereof had declined to assess for taxes those owning such mineral lands. Nor do we think this is made manifest by a failure on the part of said assessor to reduce the value of the assessment against the lands of Downman's grantors. The other lands in said county were assessed for taxes against the owners as lands are usually assessed. Such an assessment unquestionably embraced the mineral rights in said lands, because the same were unqualified and included an assessment against the minerals, if any there be thereon, as well as against the surface estate. The order of the commissioners' court was not a direction to assess alone the mineral rights held by Downman, but it was general and embraced within it all persons holding and owning mineral rights where the same had been severed by the owner from the surface estate. We think this is an entirely different question from that determined in the case of Lively v. M., K. & T. Ry. Co., supra. In that case it was shown that the assessment of the intangible assets of the railway company was fixed at their full market value, while the value of all other property in the county was assessed at twothirds of its actual value. Therefore, such corporation was denied the right of equal and uniform taxation secured to it by section 1, art. 8, of the state Constitution, as well as

the right to equal protection of the laws, as guaranteed by section 1 of the fourteenth amendment of the Constitution of the United States; to our minds an entirely dissimilar proposition to the one here presented. Besides this, we are inclined to think that the evidence fails to show any such lack of uniformity and inequality or systematic discrimination as complained of by appellee. It does not appear from the evidence that the taxes assessed against the defendant were greater than those assessed against any other owner of mineral rights in Llano county. But the argument made, based on the facts, is that the owners of the surface estate, to wit, Downman's grantors, were required to pay and did pay the same amount of taxes upon their lands as other owners who had not conveyed the mineral rights in their respective tracts. This latter feature, however, does not make the assessments in our judgment contravene either the letter or the spirit of the constitutional provisions above quoted.

Before closing this opinion the writer desires to express his appreciation of and acknowledgment for the great aid afforded him in the investigation of the questions here discussed by the able and elaborate briefs of the distinguished counsel representing the respective parties hereto.

Believing that the court erred, for the reasons hereinbefore pointed out, it becomes our duty to reverse the case and to render such judgment as the court below should have rendered. We therefore direct that the judgment of the court below be, and the same is hereby, reversed and rendered in behalf of appellant.

Reversed and rendered.