## No. 11,917.

### HOME INSURANCE COMPANY VS. BOARD OF ASSESSORS.

| 48 | 451 |
|---|---|
| 49 | 404 |
| 49 | 407 |
| 48 | 451 |
| 110 | 886 |

Losses of an insurance company are necessary incidents of its business; are constantly occurring and are provided against in the risks undertaken; and premiums are collected for the purpose of reimbursement.

The reimbursement of reinsurances which are involved in pending litigation between the insurance company and its correspondents and customers does not constitute a proper object of reduction in assessment.

Nor is an over-estimate, made of unearned premiums collected and returned to its policy-holders, on account of cancellation of policies, a proper object of reduction. It is natural and to be expected that such estimates will fluctuate, and hence an assessment which is predicated upon an estimate can not be absolutely certain.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

---

*Browne & Choate* for Plaintiff, Appellant.

---

*E. A. O'Sullivan*, City Attorney, and *Henry Renshaw*, Assistant City Attorney, for Defendants, Appellees.

Insurance Co. vs. Assessors.

Argued and submitted December 4, 1895.

Opinion handed down January 6, 1896.

Rehearing refused February 24, 1896.

The opinion of the court was delivered by

WATKINS, J.  The object of this suit is to obtain a reduction of plaintiff's assessment, which is as follows, viz.:

| | |
|---|---:|
| Real estate | $80,000 |
| Money loaned at interest, all credits and all bills receivable for money loaned or advanced, or for goods sold | 98,488 |
| Money in possession, or on deposit, or on hand | 118,022 |
| Bonds of all kinds, specifying each kind and their value | 26,000 |
| Total | $272,510 |

This assessment is for the year 1894.

The contention of the defendant is that the assessment is correct, and conforms exactly with a published statement made by the plaintiff on the 1st of January, 1894, which was verified by the affidavits of the president, secretary, and three members of its finance committee, and was published in several daily papers of the city, at that time; while that of the plaintiff is that since the date of the published statement, which is admitted to have been correct at the time it was made, changes and alterations have taken place in the company's assets, entitling it to certain reductions in its assessment, which are as follows, viz.:

*First*—For losses suffered by it and paid after its published statement had been made, sixty-nine thousand four hundred and fifty-four dollars and fifty-nine cents.

*Second*—Amount of money loaned, reduced from the stated sum of ninety-eight thousand four hundred and eighty-eight dollars to thirty-one thousand three hundred and ninety-four dollars and thirty-seven cents.

*Third*—Amount claimed by the plaintiff for reinsurance involved in suit and issue doubtful, twenty-three thousand dollars.

*Fourth*—Amount of premiums unearned, returned on policies canceled, in *excess of estimate*, six thousand dollars.

*Fifth*—Amount of Georgia State bonds owned by the company and deposited with the treasurer of that State to secure payment of policy-holders, same having been taxed in that State, twenty-six thousand dollars.

The total reductions claimed represent the gross sum of one hun-

dred and sixty-five thousand eight hundred and forty-eight dollars and ninety-six cents, on a total assessment of two hundred and seventy-two thousand five hundred and ten dollars, leaving an admitted balance of only one hundred and six thousand six hundred and sixty-two dollars and four cents, or a shrinkage of considerably more than fifty per cent. *within half a year.*

### I.

Losses are, to an insurance company, necessary incidents of its business. They are constantly occurring, and are contracted and insured against; but premiums are collected for the purpose of reimbursement thereof.

These are in the nature of *debts* of the company, the payment of which is contemplated from the character of its business.

The assessment of property is not affected by the amount of debts the taxpayer owes. If they were a factor in the matter of assessment, only people who are solvent could be required to pay taxes.

### II.

We do not see how the plaintiff can expect a reduction on account of the amount of money loaned being *actually* less by sixty-seven thousand and ninety-four dollars than what it was stated to have been in the company's sworn published statement. It is in the nature of an estoppel *in pais*, binding on the company. It was made by the company's officers, possessed of the fullest and most accurate information, and with the evident object of advancing the company's interest financially.

That statement is in evidence, and the president and secretary testified that it was "true and correct when made,"

In the brief nothing is said in reference to this item, and the president states, as a witness simply, that the assessment is incorrect—that the company did not have that much money loaned, but he vouchsafed no explanation of the published statement.

But on the cross-examination of the president as a witness he admitted that the ninety-eight thousand four hundred and eighty-eight dollars, which is the item on plaintiff's assessment which embraces "money loaned at interest, all credits, etc.," was made up as follows:

Loans on collaterals ......................................................................................... $31,394
Uncollected insurance ...................................................................................... 21,382
Premiums in course of collection ................................................................... 51,614
　　Less 15 per cent.

His admission destroys his claim altogether and proves that he is not entitled to the reduction he claimed. He made claim to the reduction on the ground that the *entire item* of ninety-eight thousand four hundred and eighty-eight dollars was for *money loaned;* whereas, his admission as a witness is that it includes uncollected reinsurances and premiums in course of collection, also.

### III.

The reinsurances which are involved in suit are included in the item of the assessment last mentioned; but the company has a decree of the United States Circuit Court in its favor, and its apprehension arises only from the fact that the case has been appealed to the United States Circuit Court of Appeals. And defendants contention is, that " until they are finally passed upon by the court of last resort, it can not be determined whether they can be classed among the assets of the company or not." But we do not regard that to be a correct conclusion. The claims referred to are carried on the books of the company as forming part of its assets, and for that reason they are liable to assessment. It is trite to say that an assessment is based upon *prima facie* ownership, and upon possible values. These claims were *in esse* and in the company's possession, and carried on its books. It would be imposing a great hardship upon the defendant to be compelled to establish title to the property in the taxpayer, or wait the uncertain issue of pending or possible litigation, before making an assessment. We think the board had the right to make the assessment, with the lights before them, without regard to the suit.

### IV.

In our opinion the company is not entitled to any reduction for " the estimated amount of unearned premiums collected, and returned to the policy-holders, on account of cancellation of policies." The assessment followed the line pursued by the company in making its published statement; and we can not regard it material to the question, that the amount returned to policy-holders was somewhat in excess of the previous estimate. The law fixes a date for the completion of assessments, as the 21st of March. Sec. 26 of Act 85 of 1888; Sec. 20 of Act 106 of 1890. It would destroy all certainty in assessments, if subsequent fluctuations in the value of

property assessed, or in the taxpayer's *estimate* of it, were held to be sufficient cause for an alteration thereof, conformably thereto.

## V.

The Georgia State bonds are listed in the company's published statement of December 31, 1893, and the proof shows that they are on deposit with the treasurer of that State to secure the payment of policy-holders in that State. The statement of the president is, that he has been endeavoring to get possession of them for some time, but that same are withheld until two or three small matters of litigation in that State have been settled. There is no proof in the record to the effect that these bonds have been taxed in that State. The taxability of these bonds was maintained in Mechanics and Traders' Insurance Company vs. Board, 47 An. 1498, and we think our decision is correct.

Having given due attention to all the grounds of complaint the plaintiff has urged against the assessment, our conclusion is that they are not well taken.

Judgment affirmed.

MR. JUSTICE BREAUX dissents for the reasons for dissenting from the decision in the case of Mechanics and Traders' Insurance Company vs. Board, 47 An. 1498.