STATE v. ST. PAUL & DULUTH RAILROAD COMPANY.[1]

November 26, 1900.

Nos. 12,256—(28).

**Taxes—Riparian Rights.**

Riparian rights are mere incidents to and a part of the abutting shore property, are inseparable therefrom except at the instance and by the act of the owner, and, until so separated by him, not subject to taxation independent from the shore property to which they so belong.

**Same—Exemption of Riparian Property.**

Where riparian property is for any reason exempt from taxation, riparian rights incident and appurtenant thereto are included within such exemption, and also exempt.

In proceedings in the district court for St. Louis county to enforce collection of taxes on real estate delinquent in January, 1900, St. Paul & Duluth Railroad Company, as owner of real estate sought to be taxed, interposed an answer. The matter was heard before Cant, J., who found in favor of plaintiff, and certified to the supreme court for its determination the points raised by the objections of defendant. Reversed.

*Wm. B. Phelps*, County Attorney, for plaintiff.
*Hadley & Armstrong*, for defendant.

BROWN, J.

Certified tax case from the district court of St. Louis county.

The St. Paul & Duluth Railroad Company is a corporation organized and existing under the laws of the state of Minnesota, and under and pursuant to such laws pays a tax on its gross earnings in lieu of all other taxes. For a number of years past the company has owned, and still owns, a tract of land on the west side of Rice's

[1] Reported in 84 N. W. 302.

Point in the city of Duluth, bordering on Lake Superior, commonly called and known as "North Albert Posey Tract." The tract has never been platted into lots or blocks, but has at all times been used by the railroad company for yards and railroad purposes, and is exempt from ordinary taxation because of the gross earnings tax paid by the company. The land lying between the shore line of this property and a dock line established by the city of Duluth is covered with water and navigable for tugs and other small craft. The submerged land has never been reclaimed, improved, or conveyed separately from the shore land, and is not used for any purpose whatever.

The county auditor of said county, acting under G. S. 1894, § 1626, platted a part of such submerged land, describing it on such plat as lots V, VI, VII, and VIII, of Auditor's Plat No. 4, and placed the same upon the real property assessment list, and taxed them for the year 1898 separate and independent from the shore land. The railroad company appeared in the tax proceedings and objected to the assessment on the following grounds: First, that the submerged land so platted and sought to be taxed was held and owned by the company as incident and appurtenant to the adjoining shore tract, and is not subject to taxation separate therefrom; second, that the proceedings by the county auditor in platting and attempting thereby to sever the submerged land and riparian rights from the shore estate, and listing the same for taxation independent thereof, were wholly unauthorized by law; third, that, as the riparian property constitutes the yard of the railroad company, is used exclusively for railroad purposes, and exempt from taxation, all riparian rights incident thereto are also exempt. Whether these objections are well taken is the question certified to this court. The court below overruled them, and sustained the tax.

The controlling question in the case is, may riparian rights be taxed as real estate separate from and independent of the parent estate to which they belong before severed and separated therefrom by some act of the owner? There would be no difficulty in answering the question if the parent estate was subject to taxation as other property. In such case the riparian rights could not be taxed

separately. The tax upon the shore property to which they belong and are an incident would include the riparian rights, as well as all other rights, incidents, and appurtenances. Riparian rights, though recognized by the law of this state as property rights subject to sale and transfer by the owner of the adjoining or shore property, are, until separated and disassociated therefrom by some act of such owner, an incident to and part of the abutting shore property, having no separate or independent existence. For all purposes, taxing and otherwise, the shore property and the submerged land constitute but one tract or parcel of land; and, as the abutting shore property is the superior or paramount estate, the submerged land and all riparian rights are necessarily included therein, and inseparable therefrom, except by some act of the owner indicating an intention to sever them.

Counsel for the state does not controvert this proposition, and he concedes that if the shore property was owned by an individual, a tax thereon would include and cover all riparian rights. But he contends that, as the shore property is exempt from taxation because used for railroad purposes, and as the submerged land is not used in connection therewith, or for any purposes whatever, it is taxable as other real property owned by railroad companies which is not used for railroad purposes. This contention is based on the theory that, inasmuch as the owner of the shore estate may sever and separate therefrom the submerged land and riparian rights incident thereto, and sell and dispose of the same to one having no interest in the shore property, such submerged land is severable without the consent of or action by the shore owner, and was properly platted by the county auditor as separate and independent property. It is claimed that this position is sustained by the decisions of this court holding that the owner of riparian property may disassociate and separate his riparian rights therefrom, and sell and dispose of them as independent property. This court has so held. Hanford v. St. Paul & D. R. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144; Gilbert v. Eldridge, 47 Minn. 210, 49 N. W. 679. But none of the cases in which the rule is followed have attempted to hold that the riparian rights have any separate or independent existence until severed from the paramount estate by act of the owner. The pro-

ceedings here in review are based on the assumption that no action on the part of the shore owner is necessary to effect a separation of the properties; that the state may effect such separation in the manner here adopted and followed. This theory is erroneous, and cannot be sustained.

Riparian rights are by nature mere incidents to the shore property of which they are a part. They are made up of distinct elements. Embodied therein is the right to fill in and reclaim the submerged land out to the point of navigability, the right to the beneficial use of the water, and the right of access from the shore to the main or navigable body of water. All these rights are in their very nature peculiarly beneficial to the abutting shore property, are mere incidents to it, and should be held inseparable therefrom except by act of the owner. The fact that the shore property is exempt from taxation gives no separate existence to the riparian rights, nor does it confer upon the state the right or power to separate them for taxing purposes. This court went quite as far as sound reason and logic would seem to warrant when it held that the owner could, at his option, separate his riparian rights, and sell and dispose of them independently of the parent estate; and we do not think the rule should be extended to confer that right upon third persons having no interest in the shore property.

The situation of the railroad company is precisely the same as would be that of a charitable or educational society owning similar riparian property. Property owned and used solely for the purposes of such society is exempt from taxation, and, if any part of it consisted of riparian property, such as this, the exemption would undoubtedly extend to all rights and privileges of a riparian nature. And so, also, if the riparian property be held by the owner as a homestead, the homestead exemption laws would protect the riparian rights from seizure on execution at the suit of creditors. Such rights could not be levied upon and sold separate from the shore property. Of course, if the riparian rights so incident to the railroad property in this case were turned to other than railroad uses and purposes by the act of the company, such act might work a separation of such rights and subject them to taxation. But such is not the case. There has been no separation by any such act on the

part of the company. The riparian rights are not used for any purpose, nor have they been leased or sold. We therefore hold, without further remark, that riparian rights are incident to and part of the abutting shore property, are inseparable therefrom except at the instance and by the act of the owner, and, until so separated by him, not subject to taxation independent from the shore property to which they so belong. The state has no power to effect a separation of such properties for taxation purposes or otherwise. The right to do so is exclusively with the owner of the shore estate.

The order of the district court is reversed, and the proceedings. remanded, with directions that they be dismissed.