COLEMAN et al. v. CROWDUS et al.†
(No. 8201.)

(Court of Civil Appeals of Texas. Ft. Worth. May 22, 1915. Rehearing Denied July 3, 1915.)

1. TAXATION ⬤⟦734⟧—TAX SALE—DEFENSES —ASSESSMENT.
Where the state secured a judgment for delinquent taxes on land for a series of years, in one of which the land was not assessed, such judgment, and a sale of the land thereunder, were invalid, since an assessment, as provided by law, is a condition precedent to a lawful foreclosure of a state's lien for taxes and a sale thereunder, irrespective of the provisions of particular statutes, regulating the forced collection of delinquent taxes.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–1473; Dec. Dig. ⬤⟦734⟧.]

2. TAXATION ⬤⟦647⟧—TAX SALE—JUDGMENT —DOCKET ENTRY.
Where, in the state's suit to foreclose its lien on land for delinquent taxes, the judgment and sale thereunder were invalid because such judgment included taxes for a year in which the land had not been assessed, and for which the petition did not pray, the sale could not be sustained by regarding as the judgment an entry on the trial court's docket of "Judgment for the plaintiff for foreclosure as prayed," thus treating the inclusion of the unassessed year in the formal judgment as a clerical mistake of substituting it for another specified in the petition, no motion to correct having been made below, since the formal judgment entered by the clerk on the minutes, and subsequently approved, was to be accepted on appeal as conclusive.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1312–1315; Dec. Dig. ⬤⟦647⟧.]

3. TAXATION ⬤⟦667⟧—TAX SALE — EXCESSIVE JUDGMENT FORECLOSING STATE'S LIEN.
Judgment in state's suit to foreclose lien for delinquent taxes for a series of years, including 1885, for an amount covering the tax for such year, for which no tax was claimed by the petition to be unpaid, was excessive.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1350; Dec. Dig. ⬤⟦667⟧.]

4. TAXATION ⬤⟦417⟧—ASSESSMENT—UNKNOWN OWNER—STATUTE.
Under Rev. St. 1911, art. 7563, cl. 1, providing that in assessing unrendered property it shall be listed and assessed "in the name of the owner; if unknown, say 'unknown,'"— where the former owner of land was dead, and it appeared that the assessor knew the fact, his assessment to such former owner by name was invalid.
[Ed. Note.—For other cases, see Taxation. Cent. Dig. § 699; Dec. Dig. ⬤⟦417⟧.]

5. TAXATION ⬤⟦439⟧—ASSESSMENT—UNKNOWN OWNER—STATUTES.
Rev. St. 1911, art. 7527, providing that no assessment of real property shall be illegal by reason of its not being assessed in the name of the owner, did not validate the assessment of unrendered property formerly owned by a decedent, known to the assessor to be dead, to such decedent by name, invalid under article 7563, providing that unrendered property shall be assessed "in the name of the owner; if unknown, say 'unknown'"; since article 7527 applies only to assessments of land rendered for taxation by the owner.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 770, 771; Dec. Dig. ⬤⟦439⟧.]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Suit by John Roy Coleman and Clyde Seabrook, by next friend, against R. L. Crowdus and others. Judgment for defendant Crowdus, and plaintiffs appeal. Reversed, and rendered for plaintiffs.

McCart, Bowlin, Terrell & McCart, of Ft. Worth, for appellants. W. R. Booth, of Ft. Worth, for appellee.

CONNER, C. J. John Roy Coleman and Clyde Seabrook, by next friend, sued to recover title and possession of lot 15, "Land 500," in the city of Ft. Worth. Later they instituted a suit to set aside a judgment and tax sale under which the defendant R. L. Crowdus, through mesne conveyances, claimed the lot in question. The two suits were consolidated and in a trial before the court without a jury judgment was rendered for the defendant Crowdus.

No conclusions of fact or of law were filed by the court, but the evidence on the controlling issues in the case is substantially undisputed. Omitting evidence which relates to questions presented to us that we deem it unnecessary to notice, the following are the undisputed facts: Prior to the month of March, 1892, John Coleman was the owner of the lot in controversy. During that month he intermarried with Beulah Donahue, after which he built upon the premises in controversy a dwelling which was occupied by himself and wife as their home, and upon which, on the 15th day of December, 1892, the plaintiff John Roy Coleman was born. Afterwards during the month of December, 1893, John Coleman died. The widow, by proper

proceedings in the probate court, caused the premises to be set apart to her as homestead and continued to occupy it with her said son for some time, after which she removed to Seattle, Wash. Thereafter, in the year 1896, Mrs. Beulah Coleman was married to G. W. Seabrook, and of this union was born one child, Clyde Seabrook, one of the plaintiffs in this suit. All of the parties named continued to reside at Washington and in the state of California until and after the death of G. W. Seabrook and of Mrs. Beulah Seabrook, who died in March, 1915, and left as her only surviving heirs the plaintiffs John R. Coleman and Clyde Seabrook. The facts further show that on the 20th day of November, 1915, the state of Texas filed suit in the district court of Tarrant county to recover alleged unpaid and delinquent taxes on the lot in controversy, due to the state, in the sum of $16.10, county taxes $21.24, fees allowed by law amounting to $20.25, including a penalty amounting to 10 per cent. of the taxes for the years including and since the year 1897, with interest on said taxes from the 1st day of January next succeeding the years for which it was alleged the taxes were delinquent and unpaid. The state alleged that for the charges named it was entitled to a lien and sought its foreclosure. The citation directed the officer to summon "Unknown Owner, Beulah Coleman, John Coleman, and John S. Coleman, whose residence is alleged to be unknown." The record shows that Ike Wynn, Esq., was appointed by the judge of the district court to answer for the defendant unknown owner and others. He filed a general demurrer and general denial, and judgment was rendered—

"in favor of the plaintiff state of Texas for unpaid and delinquent taxes for the years 1893, 1895, 1899, 1900 to 1904, inclusive, and that said taxes, together with interest, penalties, amount to the sum of $82.29, and judgment is rendered for said sum and costs and for foreclosure of tax lien upon said property."

As shown in both the petition and in the citation, the years for which it was alleged the taxes were due and delinquent were the years 1885, 1886, 1893, 1899 to 1904, inclusive. It thus appears that in neither petition nor citation was it charged that the taxes were due and unpaid on the lot in controversy for the year 1895, one of the years included in the judgment of foreclosure, as above recited. Nor does it appear that there was in fact any assessment made for the taxes of this year, or that any delinquency for taxes existed for the year 1895. It was alleged, as shown by the schedule of assessments attached as an exhibit to the state's petition, that for the years 1885, 1886, and 1893 the property was unrendered, but assessed against John S. Coleman. For the years 1899 and 1900 it was assessed against Beulah Coleman; for the years 1901 and 1902 against unknown owner; for the years 1903 and 1904 against John Coleman. The undisputed evidence shows that while the assessments

for the years 1903 and 1904 were entered as against John Coleman, the fact was that the assessor did not know who the owner was, and that the assessment had been made against John Coleman as the owner "because he had at one time owned the property, the real ownership being unknown."

[1-3] On this state of facts we fail to see how it can be seriously contended that the state's judgment for taxes can be upheld. We need not refer to the terms of the particular statutes authorizing the forced collection of delinquent taxes, for under every tax law we think it may be truly said that an assessment, as provided by law, is a condition precedent to a lawful foreclosure of the state's lien and a sale under the proceedings. See Clegg v. State, 42 Tex. 605. In the case before us there was no assessment at all for the year 1895. In answer to this manifest defect in the judgment appellee has caused to be made part of the record an entry on the trial court's docket in the following words: "Judgment for plaintiff for foreclosure as prayed for $82.24 and costs"—and insists that this entry should be regarded as the true judgment in the case, and that the entry of the year 1895 in the judgment was evidently a clerical mistake of substituting 1895 for the year 1885, but no motion in the court below was made to correct the mistake, if any such there was, and authority need scarcely be cited for the proposition that the note upon the trial court's docket cannot be accepted here as the judgment of the court. The judgment as entered by the clerk upon the minutes of the court, and which has been subsequently approved by the court, is the final and authentic declaration of the law as to the court's action, and must be accepted by us as conclusive. In this connection it may be further observed that the record makes it evident that the amount of the taxes for the year 1885 alleged to have been due was included in the judgment, and there not having been any taxes due for the year 1895, and the judgment not having foreclosed a lien for the year 1885, it is manifest that the judgment to the extent of the alleged delinquent taxes for the year 1885 is excessive, for which cause alone it may be said that the tax sale in question was void. See Eustis v. City of Henrietta, 91 Tex. 325, 43 S. W. 259; Lufkin v. Galveston, 73 Tex. 343, 11 S. W. 340.

[4] Again, the law specifically provides that in the assessment of unrendered property the assessor shall list and assess such property in "the name of the owner; if unknown, say 'unknown.'" See R. S. 1911, art. 7563, cl. 1. And it is manifest from the statement of facts already given that in the instance before us the assessor for more than one of the years for which the tax lien was foreclosed assessed the property against John Coleman, when in truth the owner of the property was unknown to him, such assessment being in direct contravention of the

express direction of the law. In Yenda v. Wheeler, 9 Tex. 408, a tax sale was held to be invalid where it appeared that an assessment purported to be made in the name of the owner, but where in fact it was not that of the owner and did not appear to be so except from the county map. In the case of Wren v. Scales, 55 Tex. Civ. App. 62, 119 S. W. 879, this court held that a judgment for delinquent taxes and sale thereunder was void where it appeared that the assessment was against an unknown owner when in fact, by the exercise of proper diligence, the name of the owner could have been ascertained. The converse of the proposition, it seems to us, is also true; that is, that in cases where the name of the owner of property assessed for taxation is unknown, and the assessor lists and assesses it as against a named individual not the owner, the assessment cannot be upheld. See, also, Pfeuffer v. Bondies, 42 Tex. Civ. App. 52, 93 S. W. 221; Mote v. Thompson, 156 S. W. 1105. In the case before us it is clear that John Coleman had been dead for years prior to the assessment of 1903 and 1904, and was known to have been so, for not only did the probate records show the death of John Coleman, and hence conveyed the information that the title to the property in question descended to his legal heirs, but the records of the tax assessor himself showed that the property had been assessed for the four years preceding 1903, first, to Beulah Coleman, and then as against an unknown owner.

[5] In this connection we should perhaps notice article 7527 of our statutes, which appellee urges in opposition to the cases hereinabove last cited. The article referred to reads:

"All real property subject to taxation shall be assessed to the owners thereof in the manner herein provided; but no assessment of real property shall be considered illegal by reason of the same not being listed or assessed in the name of the owner or owners thereof."

This article, however, constitutes a part of chapter 11 of the title on taxation, which, among other things, relates to the "mode of rendering" property for taxation. In this chapter the assessor is required to list and assess real property rendered for taxation by the owner in the name of the "owner." See articles 7517 et 7518. Article 7563, however, which requires the property to be listed and assessed in "the name of the owner; if unknown, say 'unknown'"—is part of chapter 12, and is made to specifically apply to unrendered property. We think, therefore, that article 7527 should be limited in its application to cases where the owner has made rendition of his lands for taxation, to the end that all of the articles may be harmonized and given appropriate effect as far as possible. There is good reason, as it seems to us, for the distinction, for where the owner lists or renders his lands for taxation, he

has full notice of the assessment in whatever name the property is listed, and there is, hence, reason for special provision that an error or mistake in entering the name of the owner shall not invalidate the assessment. But the case is different where the owner has not listed his property and it is assessed against an unknown owner. In this class of cases the notice of assessment is wholly constructive, and the owner may justly insist that before his property is taken it should be made to appear that all of the requirements of the law have been strictly followed.

On the whole we conclude that the judgment and tax sale and deeds under which the defendant claims should be set aside, and that the judgment as rendered below should be reversed and here rendered for appellant, removing the cloud from the title and granting unto them possession of the premises in controversy, without prejudice, however, to their relative rights as between themselves.

BUCK, J., not sitting.