## HUMBLE OIL & REFINING CO. v. STATE.
### (No. 538.)

Court of Civil Appeals of Texas. Waco. Dec. 22, 1927.

Rehearing Denied Jan. 26, 1928.

**1. Taxation ⬡➡530—Attempted levy by tax assessor in July, 1924, against mineral estate for taxes for 1923, which owners had paid prior to severance held void (Rev. St. 1925, arts. 7146, 7156, 7174).**

Where mineral estate has not been severed from tracts of land as of January 1, 1923, when they were assessed, and owners of the land had rendered it in its entirety for taxes for 1923, and paid taxes so assessed and levied, attempted levy by tax assessor in July, 1924, at greatly increased valuation due to discovery of oil, *held* void under Rev. St. 1925, arts. 7146, 7156, 7174.

**2. Taxation ⬡➡63—Severed mineral estate is subject to taxation same as other property.**

After the mineral estate has been severed by the owner from the land, same is subject to taxes and owner of the mineral estate is liable for taxes to same extent that property owners are liable for any other taxes.

**3. Taxation ⬡➡530—Taxes having been paid on particular tract for given year in name of one person, tract cannot be made liable for taxes against any other person (Rev. St. 1925, art. 7156).**

Rev. St. 1925, art. 7156, providing that land on which taxes shall have been paid shall not afterward be subject to payment of taxes for same period in a different county, is applicable, where taxes have been paid on particular tract of land for a given year in name of one person, and hence tract cannot be assessed and made liable for taxes against any other person.

**4. Taxation ⬡➡348—Rendition of land against owner for taxes can include enhanced value thereof because containing valuable minerals.**

State has no right to sever the mineral estate and render same separately from the land for the purposes of taxation, but a rendition of the land against the owner can be at 'such' a value as to include the enhanced value thereof by reason of its containing valuable minerals.

**5. Taxation ⬡➡79—Purchaser of mineral estates after January 1, 1923, held not personally liable for taxes for such year on reassessment due to enhanced valuation (Rev. St. 1925, art. 7151).**

Rev. St. 1925, art. 7151, providing that all property shall be assessed against person owning it on January 1st of year for which rendered, purchaser of mineral estates in tracts of land which he bought after January 1, 1923, at which time owners had rendered and paid taxes thereon, *held* not liable personally for taxes for such year on reassessment of property due to greatly enhanced value by discovery of oil thereon.

**6. Taxation ⬡➡318—Valuation of property for taxes for any year shall be fixed as of January 1st preceding assessment (Rev. St. 1925, arts. 7174, 7211–7212, 7214, 7151; Const. art. 8, § 1).**

Under Rev. St. 1925, arts. 7174, 7211–7212, 7214, 7151, and in order to comply with Const. art. 8, § 1, requiring equal and uniform taxation, valuation of property for taxes for any year shall be fixed as of January 1st preceding assessment.

**7. Evidence ⬡➡18—It is common knowledge that real estate as regards taxation may be greatly enhanced in cash value between January 1st and April 30th.**

It is a matter of common knowledge that real estate as regards taxation may by various ways be greatly enhanced in actual cash value between January 1st and April 30th, and especially between January 1st and July, when commissioners' court meets as a board of equalization.

**8. Taxation ⬡➡590—Warrantors of title of mineral interests in land purchased by defendant held proper parties in suit to recover taxes.**

In suit to recover taxes claimed due from defendant on mineral estates in certain tracts of land which defendant had purchased from others, warrantors of title from whom defendant had purchased were proper parties.

**9. Taxation ⬡➡79—Tax assessor must assess property against parties who own same on January 1, 1923, rather than against purchaser thereof after that date (Rev. St. 1925, arts. 7161, 7205).**

Under Rev. St. 1925, arts. 7161, 7205, it was duty of tax assessor to assess mineral estates against parties who were the owners on January 1, 1923, rather than against defendant who had become the owner thereof by purchase after that date, where such estates had become greatly enhanced in value due to discovery of oil.

Appeal from District Court, Navarro County; Hawkins Scarbrough, Judge.

Suit by the State against the Humble Oil & Refining Company, with cross-action by defendant. From a judgment for plaintiff and sustaining a plea in abatement to the cross-action, defendant appeals. Reversed and remanded.

Richard Mays and H. B. Daviss, both of Corsicana, and G. P. Dougherty, E. E. Townes, and John C. Townes, Jr., all of Houston, for appellant.

B. W. George and Taylor & Howell, all of Corsicana, and Phillips, Townsend & Phillips, of Dallas, for the State.

---

⬡➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BARCUS, J. This suit was instituted by appellee against appellant to recover $88,526.69 taxes which it claimed were due by appellant on the mineral estates in twelve separate tracts of land in Navarro county for the year 1923. The cause was tried to a jury, and at the conclusion of the testimony the trial court instructed the jury to return a verdict in favor of appellee for the amount sued for. Appellant by cross-action made the grantors from whom it had purchased the respective mineral estates parties defendant, and asked for judgment over against each of said grantors on their respective warranties. Appellee, as well as the warrantors, filed pleas in abatement, claiming that there were misjoinders of parties and causes of action. The court sustained the pleas in abatement, and dismissed said guarantors and warrantors from the suit.

The material facts are undisputed. It appears that in 1923 the "Powell oil field" was discovered and proved to be one of the most extensive and valuable oil fields that have been discovered in Texas. The appellant, on January 1, 1923, owned one lease of 40 acres in said field, and thereafter, during the year 1923, at various times between January and June, it purchased eleven other tracts, varying from 12 to 135 acres. Eight of these tracts were purchased direct from the landowners, and on three of the tracts the landowners had, prior to January 1, 1923, sold seven-eighths of the mineral estate to different parties, who owned said mineral estates on January 1st, and who thereafter, during 1923, by proper conveyances, transferred same to appellant. The owners of the entire twelve tracts of land rendered same for taxes for the year 1923, and paid said taxes.

The big discovery well in the Powell field came in in May, 1923, and immediately the mineral estates became very valuable, and many large producing wells were drilled in said territory during the summer of 1923. After the oil field was discovered, the commissioners' court instructed the tax assessor to assess the mineral estates against each of the respective owners thereof as of date when the assessments were made, and, in compliance with said instruction, the tax assessor attempted to assess against each owner thereof the mineral estate he owned in June, July, and August; said assessments being made as soon as a producing well would be brought in affecting the particular locality. Assessments were made against appellant as the owner of the twelve tracts of land, same being assessed in July, 1923. In June 1924, it was discovered that the assessments against appellant as made by the assessor in July, 1923, were invalid for various reasons, and the commissioners' court, by order, declared same invalid, and directed the assessor to reassess said properties for said mineral

estates for the year 1923. The tax assessor did, in July, 1924, reassess said twelve tracts of land against appellant as the owner thereof; the total assessment against the twelve tracts being $5,145,000.

[1-3] Appellants contend that, since the mineral estate had not been severed from eight of said tracts of land on January 1, 1923, and since the owners of the land had rendered said land in its entirety for taxes for 1923, and paid the taxes so assessed and levied, that the attempted levy made by the tax assessor in July, 1924, was illegal and void. We sustain this contention. It is now a well-recognized principle of law that, after the mineral estate has been severed by the owner from the land, same is subject to taxes, and the owner of the mineral estate is liable for taxes to the same extent that property owners are liable for any other tax. State v. Downman (Tex. Civ. App.) 134 S. W. 787; Id.; 231 U. S. 353, 34 S. Ct. 62, 58 L. Ed. 264; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. Until, however, the mineral estate has been severed, the rendition of the land carries with it the value of the entire estate. Article 7146 of the Revised Statutes reads:

"Real property for the purpose of taxation, shall be construed to include the land itself, * * * and all the rights and privileges belonging * * * thereto, and all mines, minerals, quarries and fossils in and under the same."

[4] Article 7174 of the Revised Statutes provides that, in ascertaining the value of the real estate on which there is any mineral, same shall be taken into consideration in arriving at the true value thereof. Article 7156 of the Revised Statutes provides that lands which have been assessed in any county for taxes and the taxes paid thereon according to law shall not be afterwards subject to the payment of taxes for the same period in a different county. We think said statute should equally apply; if it is shown that taxes have been paid on a particular tract of land for a given year in the name of one person, it cannot be assessed and be made liable for taxes against any other person. In addition to the provisions of article 7146 of the statutes above quoted, to the effect that real property shall include all minerals under the same, the authorities seem to hold that the state has no right to sever the mineral estate and render same separately from the land, but that a rendition of the land against the owner can be at such a value as to include the enhanced value thereof by reason of its containing valuable minerals. Kansas Nat. Gas. Co. v. Board of Commissioners, 75 Kan. 335, 89 P. 750; In re Delinquent Taxes, 81 Minn. 422, 84 N. W. 302; State v. Downman (Tex. Civ. App.) 134 S. W. 787; Id., 231

U. S. 353, 34 S. Ct. 62, 58 L. Ed. 264. Since the parties who owned the real estate on the eight tracts of land on January 1, 1923, rendered same for taxes for the year 1923, which assessments were approved by the commissioners' court and paid by said owners, the state did not have the power to thereafter assess the mineral estates against appellant, who purchased said estates long after the 1st of January, 1923, or against any other person.

[5] Appellant contends with reference to the three tracts on which it bought the mineral estate after January 1, 1923, that it is not liable personally for said taxes. It contends that the owners of the respective mineral estates on January 1, 1923, are personally liable for said taxes, and that, at most, the state has only a lien on the mineral estate to secure the payment of said tax, and that in no event is it personally liable therefor. We sustain this contention. Article 7151 of the Revised Statutes provides, in effect, that all property shall be assessed against the person who owned same on January 1st in the year for which same is rendered, and our courts have uniformly held that the person who owns property on the 1st of January is personally liable for the taxes for said year, although same may be sold shortly thereafter. Carswell & Co. v. Habberzettle, 39 Tex. Civ. App. 493, 87 S. W. 911; Irvin v. Edwards, 92 Tex. 258, 47 S. W. 719; Winters v. Independent School District (Tex. Civ. App.) 208 S. W. 574.

[6] Appellant further contends that the valuation of property for taxes for any year shall be fixed as of January 1st preceding said assessment. We sustain this contention. Our statutes seem to be somewhat in confusion with reference to the time when the value of property shall be ascertained in fixing the rendition. Article 7174 requires each tract or lot of land to be valued by itself as same may "be fairly worth in money at the time such assessment is made." Article 7211 provides that, if the tax assessor is not satisfied with the value placed thereon by the owner, the assessor shall value same, and shall value it at "the reasonable cash market value of such property at the time of its rendition." Article 7212 of the Revised Statutes provides that the board of equalization of the county shall supervise the assessments, and, if in their judgment the assessments have not been rendered correctly, that they may make such corrections as in their judgment are proper. Article 7214 of the Revised Statutes provides that the tax assessor, before he enters upon his duties, shall take an oath that he will inspect the property, and will assess same at its market value as of January 1st preceding the assessment. Article 7151 of the Revised Statutes provides that the owner of the property, on January 1st, shall render the same for taxes, and that same shall be

rendered between January 1st and April 30th of each year. It thus appears that, under articles 7174 and 7211, the property when rendered shall be valued as at the time of the assessment, and, under article 7214, the assessor is required by his oath to value it as of January 1st.

Section 1, art. 8, of the state Constitution, requires that "taxation shall be equal and uniform." As above stated, under the decisions of our courts, the owner of the property on January 1st is responsible for the taxes for the ensuing year. Appellee contends that the value of the property shall be fixed as of the date when same is rendered by the owner, and, if same is not rendered by the owner, then that it shall be fixed on the date when it is assessed by the tax assessor. In this case, the tax assessor attempted to assess the property for taxes in July, 1923, which assessment, as a matter of fact, was found invalid, and the real assessment on which this suit is based was made by the tax assessor in July, 1924. If the rule contended for by appellee were enforced, it would be impossible to comply with the mandatory provision of our Constitution that "taxation shall be equal and uniform." The evident intention of the Legislature in requiring owners of property on January 1st to render and pay taxes for the ensuing year was to, in so far as possible, comply with said constitutional provision. Property cannot be rendered for taxes prior to January 1st, but is required to be rendered before April 30th. If the owner of unimproved real estate on January 1st should, on February 1st sell same, and thereafter, before the last of April, the purchaser should place same in a high state of improvement, and put it under irrigation, and thereby make it many times more valuable, and should, on the 30th of April, render said property at its then value against the person from whom he purchased it on February 1st, it would be manifestly unjust and unequal.

[7] It is a matter of common knowledge that real estate may by various ways be greatly enhanced in actual cash value between January 1st and April 30th, and especially between January 1st and July, when the commissioners' court meets as a board of equalization. If the law would permit the commissioners' court or tax assessor in July to render property at its then value against the person who owned the same on January 1st, it would in many instances result in a confiscation of the owner's property. No more forceful illustration can be had than in the case at bar. It appears from the record that the land involved in this controversy, including the mineral estate, on January 1, 1923, ranged in price from $25 to $200 an acre, and in July, 1923, the tax assessor valued seven-eighths of the mineral estate on part of this same land at more than $75,000 per acre. The owners of eight of the tracts of land, including the mineral estates, on January 1,

1923, rendered same for, and paid taxes assessed against, their respective tracts of land, and, after January 1st, sold part of the mineral estate. If they are now required to pay the additional taxes on the value of the mineral estate as fixed by the tax assessor in July, it will, under the record, take more money to pay the taxes than the owners actually received for their property.

The manifest intention of the Legislature was that the owner of the land, when he rendered same, and the tax assessor, at the time he accepted the rendition, or made same, if it was not rendered by the real owner, should value it as of the time it should have been rendered, to wit, January 1st. This question has not been directly before our courts. It has, however, been decided by a number of the other courts of the land. 27 Am. & Eng. Ency. of Law (2d Ed.) p. 662, lays down this rule:

"The taxable status of persons and property generally relates to a day certain in each year. When the law thus provides, no taxes can be legally assessed and levied for a particular year unless the conditions requisite to liability exist on the day fixed, and no changes in ownership, fluctuations in value, nonresidence, removal or destruction of the property, or the like, occurring subsequent thereto, can be considered in making or reviewing an assessment. The very notion of an assessment involves the fixing of values as of a certain date, since there is no mode of making the valuation vary with the increased or diminished value during the current year, and, if there were, such varying valuations would be destructive of established principles of uniformity."

Under the above proposition, authorities are cited from a large number of the states of the Union. The weight of authority seems to be that the value of property for assessment purposes should be as it exists on the earliest date same can, and should be rendered for taxes. Martin County v. Drake, 40 Minn. 137, 41 N. W. 942; Palfrey v. Connelly, 106 La. 699, 31 So. 148; Home Ins. Co. v. Board of Assessors, 48 La. Ann. 451, 19 So. 280; Bunkie Brick Works v. Police Jury, 113 La. 1062, 37 So. 970; Board of Commissioners v. Wilson, 15 Colo. 90, 24 P. 563; Dodge, Assessor, v. Nevada Nat. Bank (C. C. A.) 109 F. 726; 39 Cyc. 789; Cooley on Taxation, (4th Ed.) § 1062. In order to clarify the confusion and to make certain the legislative intent, the Legislature in 1925 amended article 7211 of the Revised Statutes, so that same now provides specifically that the values for assessment purposes shall be determined as of January 1st preceding the assessment.

[8] Appellant complains of the action of the trial court in sustaining appellee's plea in abatement, whereby its warrantors were dismissed from the suit. We sustain this assignment. Our courts have uniformly held that the warrantors of title in suits involving real estate can be impleaded where the question of title or liens on the land are involved, in order that a multiplicity of suits may be avoided, and in order that a party may obtain judgment on his warranty for whatever sum he may have to pay by reason of a defect in the title, so far as same may be covered by the warranty of the guarantor in the instrument. City of San Antonio v. Terrell (Tex. Civ. App.) 202 S. W. 361 (error refused); Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423, and authorities there cited.

With reference to the 40 acres known in the record as the R. I. Kent lease, appellant admits that it owned said mineral estate on January 1, 1923, and is liable for taxes properly assessed against same, and asks the court to determine the amount of taxes it owes on said tract. Appellant contends that the valuation placed thereon by the tax assessor and commissioners' court, based on the value as of July 23d, is unjust, and is violative both of the statutes and the state Constitution with reference to the provision that taxes shall be uniform and equal. We sustain this contention. The evidence shows without dispute that the tax assessor and commissioners' court in assessing said property in July, 1923, valued the seven-eighths mineral estate at $121,800, and that said value was determined as of that date, rather than of the date January 1, 1923. The evidence shows without controversy that on January 1, 1923, the seven-eighths mineral estate had a market value, and that it did not exceed $200 per acre.

[9] Appellant contends that the rendition against it on the eleven tracts of land which it did not own on January 1, 1923, was invalid and void, because the same were not rendered against the parties who owned same on January 1, 1923; its contention being that to be a valid assessment the property must be assessed against the party who owned the same on January 1st, if the owner thereof is known, and, if not, same must be assessed against the "unknown owner." Article 7161 of the Revised Statutes provides that, where property is rendered by the owner, the rendition shall state the name of the owner. Article 7205 of the Revised Statutes provides that, where the assessor makes the assessment, he shall assess it in "the name of the owner; if unknown, say 'Unknown.'" It is shown without dispute that, at the time the tax assessor assessed the mineral estates against appellant, he knew that appellant was not the owner thereof on January 1, 1923, and it is further shown without dispute that the assessor knew the real owner of each of said tracts of land and mineral estates on January 1, 1923. This being true, it was the duty of the tax assessor to assess said property against the parties who were the owners on January 1, 1923, rather than against the appellant, who had become the owner thereof by purchase after January 1, 1923. Our courts have held that a judgment rendered

by default in a tax suit, brought where property had been rendered against an unknown owner when the real owner was known, is void, and that a sale made thereunder does not pass title. Hollywood v. Wellhausen, 28 Tex. Civ. App. 541, 68 S. W. 329; Wren v. Scales, 55 Tex. Civ. App. 62, 119 S. W. 879; Id., 103 Tex. 304, 127 S. W. 164; Mote v. Thompson (Tex. Civ. App.) 156 S. W. 1105 (error refused); Coleman v. Crowdus (Tex. Civ. App.) 178 S. W. 585 (error refused); Yenda v. Wheeler, 9 Tex. 408. Article 7171 of the Revised Statutes, however, provides that all real property "shall be assessed to the owners thereof * * * but no assessment * * '* shall be considered illegal by reason of the same not being listed or assessed in the name of the owner." In this connection, see Young v. City of Marshall (Tex. Civ. App.) 199 S. W. 1180. We do not think it necessary in this case to, and we do not, determine whether the assessment against the property is void because same was assessed against appellant rather than the real owner. Under the facts in this case, appellee is not entitled to recover the amount of taxes assessed by the tax assessor in July, 1924, against the three tracts of land which appellant purchased after the 1st of January, nor the amount of taxes assessed against the R. I. Kent lease, for the reason that the valuations placed thereon are grossly excessive when compared with the actual cash value thereof on January 1, 1923.

The other questions presented in appellant's brief will not likely arise on another trial. For the errors indicated, the judgment of the trial court is reversed, and the cause remanded.