

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

XXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Overruled by Dickison v. City of San Antonio,

reported in 349 S. W. 2d 640, error ref., N. R. E.

Hon. George H. Sheppard
Comptroller of Public
  Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4613
Re:  Questions relating to ad
valorem tax liability as a re-
sult of the acquisition of real
estate by the United States
Government, and related questions.

     We have received and considered your request for
an opinion from this department. Since the letter, attached
to your request, contains the questions in detail, we quote
from the same as follows:

     "In connection with the acquisition of lands
by the United States and its various agencies,
both by purchase and by condemnation, it has been
the practice in some cases for such lands to be
acquired in the name of the United States and
thereafter conveyed to some agency such as the
Defense Plant Corporation, a subsidiary of the
Reconstruction Finance Corporation. In view of
existing Federal Statutes (Sec. 610 of Title 15,
U.S.C.A.) there would be no problem if the prop-
erty is owned by one of these agencies on January
1st of any given year since the property would be
subject to taxation.

     "We are confronted, however, with several
problems on which we would like to have an authori-
tative comment from your office. Briefly these may
be set up as coming under the following general
questions:

### 1.

     "A proper judgment of the District Court of
the United States vests title in fee simple to a
tract of land as of December 23, 1941, and under
the terms of the decree all claimants and lien hold-
ers, etc., have their claim for compensation as their
respective interests appear. As of January 1, 1942,
the United States of America was the fee simple owner.
The tract in question was acquired for the purpose of
constructing a magnesium plant and at the time of the

acquisition it was planned that the United States of America would in due course convey the property to the Defense Plant Corporation.

"QUESTION: Is such property subject to taxation for the year 1942 by the various taxing agencies?

2.

"Assume the same facts as in (1) foregoing, except that title was vested in the United States after January 1, 1942 and prior to April 1, 1942.

"QUESTION:  Is such property subject to taxation for the year 1942 by the various taxing agencies?

3.

"A tract owned by an individual is delinquent to the State and County for a number of years prior to the year 1929.  It is also delinquent for the years 1929, 1930 and 1931.  Assuming compliance by the Tax Collector of the preliminary requirements, a suit is filed on August 1, 1932 against the record owner and all necessary and proper parties as defendants asking for judgment for the taxes for the years 1929, 1930 and 1931 only and for a foreclosure.  This suit is brought to fruition in a final judgment and following a regular order of sale, legal levy and notice, the property is sold at public auction as required by law and bid in by an individual who had had no previous connection with the land or the suit.  A regular sheriff's deed is delivered to the purchaser following his payment of his bid.

"QUESTION: (a)  Assuming that the purchaser bid and paid the full amount of the judgment, interest and costs of court, are the taxes for the years previous to the year 1929 still a charge against the land?

"(b)  Assuming that the purchaser bid and paid an amount less than the amount of the judgment, interest, and costs, are the taxes for the years previous to 1929 still a charge against the land?

4.

"Assume the same facts as are set out in (3) foregoing, except that included in the suit and final judgment are the taxes for all years that are delinquent and at the sale the purchaser bids and pays only an amount equal to a portion of the amount sued for. A regular deed is delivered to him by the sheriff.

"QUESTION: Are taxes for any of the years sued for a charge upon the property. If so, to what extent?

5.

"An individual owner makes an offer to the United States in the form of an option to sell a piece of property at a fixed price, agreeing that the United States may immediately take possession of the property while the title is being examined, and if condemnation be necessary, agreeing that the price shall remain as fixed. This offer is dated November 5, 1941 and is accepted by the duly authorized agent of the United States after January 1, 1942. However, the United States has taken exclusive possession of the property and begun improvements thereon immediately following the date of the offer, on November 6, 1941. The title is found acceptable and a deed to the property is delivered to the United States on February 15, 1942.

"QUESTION: Is the property in question subject to taxation for the year 1942 by reason of the fact that the legal owner thereof on January 1, 1942 was an individual?

6.

"Assume the facts as in (5) foregoing, except that after January 1, 1942 the title is found to be defective as a merchantable title, although it is in fact an indefeasible title by reason of long possession, and the United States institutes a condemnation proceeding and procures a valid judgment vesting title in the United States.

Hon. George H. Sheppard, page 4

"QUESTION: Is the property in question sub-
ject to taxation for the year 1942 by reason of
the fact that the legal owner thereof on January
1, 1942, was an individual?"

Article 7151, Revised Civil Statutes of Texas, 1925,
provides as follows:

"All property shall be listed for taxation
between January 1st and April 30th of each year,
when required by the assessor, with reference to
the quantity held or owned on the first day of
January in the year for which the property is re-
quired to be listed or rendered. . . ."

By virtue of the provisions of this statute the own-
ership of property on the 1st day of January of any year cre-
ates a liability on the part of the owner for taxes levied upon
such property for that year; Humble Oil & Refining Company v.
State (Civ.App.) 3 S.W.(2d) 559, Winters v. Independent School
District of Evant, (Civ.App.) 208 S.W. 574, and the sale of
such property shortly thereafter does not affect the rule. Chil-
dress County v. State, 127 Tex. 343, 92 S.W.(2d) 1011.

Whether a particular piece of property is exempt from
taxation or not depends upon its ownership on the date as of
which the taxes are assessed, and if, after such date, but be-
fore the taxes are paid, the property is taken by eminent domain
or bought by body politic or corporate, the property of which is
exempt from taxation, the tax as originally assessed is valid
and specific, and the person who owns the property on the date
as of which the tax was assessed is legally bound to pay it. 26
R.C.L. 299.

In our opinion No. 0-4749 we held that tax liability
for all state, county, common school district and independent
school district ad valorem taxes was determined by property own-
ership as of January 1st of the year for which the taxes are as-
sessed. In the same opinion we held that property acquired dur-
ing the month of March of 1942 by the Federal Government for the
purpose of constructing a military flying school should be as-
sessed for school taxes as of January 1st of this year; that the
owner of the property on that date was personally liable for the
payment of the taxes; and, that the statutory and constitutional
lien was not extinguished because the Federal Government acquired
the property but rather became unenforceable by the taxing unit
so long as the Federal Government owned the property unless per-
mission was given by Congress to bring an action against the

Federal Government to foreclose the tax lien.  A copy of said opinion No. O-4749 is enclosed for your information.

Since the question of liability or exemption from ad valorem taxes under the laws of this State turns upon ownership as of January 1st of the year for which the tax, under the law, is to be assessed, it follows, therefore, that if the United States Government was in fact the owner, in fee simple, of the property as of January 1, 1942, the government and the property would be exempt from all ad valorem taxes for the year 1942, provided the United States held the title to the property throughout the year 1942.  We quote from 40 Texas Jurisprudence, page 24, as follows:

> "The state has no power to tax either the property of the United States situated in Texas, or the property here of the Federal agency or instrumentality, or the conduct of any business insofar as it is used as an instrumentality of the United States Government."

The fact that the Federal Government planned to convey, but did not actually convey, the property to the Defense Plant Corporation at some date subsequent to January 1, 1942, would not change the rule announced in the foregoing quotation.  However, if the United States Government conveyed the property to the Defense Plant Corporation at any time during the year 1942, then we call your attention to that part of Article 7151, supra, which reads as follows:

> ". . . If any property has, by reason of any special law, contract or fact, been exempt or has been claimed to be exempted from taxation for any period or limit of time, and such period of exemption shall expire between January 1, and December 31 of any year, said property shall be assessed and listed for taxes as other property; but the taxes assessed against said property shall be for only the pro rata of taxes for the portion of such year remaining."

In this connection we direct your attention to the pertinent part of Section 610 of Title 15, U.S.C.A., as amended June 10, 1941, Ch. 190, Sec. 3, 55 Stat. 248, which provides:

> ". . . The corporation . . . shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that

any real property of the corporation shall be sub-
ject to State, Territorial, county, municipal or
local taxation to the same extent according to
its value as other property is taxed. The exemp-
tions provided for in the preceding sentence with
respect to taxation . . . shall be construed to
be applicable not only with respect to Reconstruc-
tion Finance Corporation but also with respect to
(1) the Defense Plant Corporation . . . Such ex-
emptions shall also be construed to be applicable
to the loans made, and personal property owned, by
the Reconstruction Finance Corporation or by any
corporation referred to in Clause (1), (2) or (3)
of the preceding sentence, but such exemptions
shall not be construed to be applicable in any
State to any buildings which are considered by the
laws of such State to be personal property for taxa-
tion purposes."   (Underscoring ours)

From the foregoing consideration we answer your first
question by saying that such property is not subject to taxa-
tion for ad valorem taxes for the year 1942 by the various tax-
ing units of this State which determine tax liability based
upon ownership as of January 1, 1942.  If, however, the United
States conveys the property to the Defense Plant Corporation
at any time between January 1 and December 31, 1942, then said
Defense Plant Corporation becomes liable for and may be assess-
ed for the pro rata of taxes for the portion of the year 1942
remaining.

In view of what we have said above in connection with
your first question, we think there can be no doubt that the
owner of the property would become personally liable and the
constitutional and statutory lien become fixed, under the facts
submitted in your second question, for all ad valorem taxes for
the year 1942 to the various taxing units in this State which
determine tax liability based upon ownership as of January 1,
1942.  It would be immaterial at what time during the year, af-
ter January 1st, the title to the property passed to the United
States.  Your second question is answered in the affirmative.

We think our opinion No. O-4779, a copy of which is
enclosed, answers all of the matters submitted in your third
question.

After a careful consideration of your fourth question
we have decided that you have not given us sufficient facts from
which we can accurately advise you.  The question there presented
calls for a very thorough examination of all the facts surround-
ing the sale.

In connection with your fifth question we call your attention to the rule announced in 43 Texas Jurisprudence, pages 98 and 99, which reads as follows:

> ". . . It is obvious that an option does not operate as a conveyance of any interest or title in property. In giving an option the optionor does not sell his property nor agree to do so; he merely sells a privilege or right to buy it. Nor does the option bind the optionee to purchase; it is binding upon the optionor alone, until such time as the optionee accepts and exercises it."

It is obvious, therefore, that the actual fee simple title would remain in the optionor and be vested in him as of January 1, 1942. Applying the rules which we have heretofore discussed, your fifth question is, therefore, specifically answered in the affirmative.

We think the same reasoning must be applied, in answering your sixth question, that we used in answering your fifth question. For the reasons expressed above your sixth question is specifically answered in the affirmative.

We trust that the foregoing satisfactorily answers the questions submitted in your inquiry.

APPROVED OCT 20, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:        BWB, Chairman

HMC:db:wb

Enclosures

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Harold McCracken
Harold McCracken, Assistant