

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

November 6, 1947

Hon. Stuart B. Lumpkins          Opinion No. V-424
County Attorney
Ellis County                     Re: Effective period of
Waxahachie, Texas                    a reallocation and
                                     change of the ad
                                     valorem tax rate of
                                     Ellis County which
                                     was voted August 23,
                                     1947.

Dear Mr. Lumpkins:

         Your recent request for an opinion of this
Department is substantially as follows:

         "On August 23, 1947, the voters of
     Ellis County approved a re-allocation and
     change in the county ad valorem tax rate,
     under Texas Constitution, Art. 8, Sec. 9,
     from a 50¢ rate, divided 25¢ to the Road
     and Bridge Fund and 25¢ to the General
     Fund; to an 80¢ rate, divided 50¢ to the
     Road and Bridge Fund, 25¢ to the General
     Fund. 3¢ to the Permanent Improvement
     Fund, and 2¢ to the Jury Fund. The vote
     at such election was officially canvassed
     on August 26, 1947. The County ad valorem
     tax rate of 50¢ for 1947 was given to the
     County Tax Assessor-Collector on August 15,
     1947, and the tax rolls had been made out
     by him prior to August 26, before the re-
     sult of the vote could be known. After the
     result of the vote was known, there did not
     remain enough time before collections began
     on October 1, 1947, to remake the rolls and
     issue statements under the new 80¢ rate.
     The result was that the re-allocation and
     change in the tax rate was not in effect
     for 1947. . . .

         "QUESTION: Will such re-allocation
     and change for Ellis County expire six years
     from the election date, that is, on August
     26, 1953, so that the last collection there-
     under may be made beginning in Oct., 1952,
     thereby making the 80¢ rate apply only for

5 years; or will the change be in force
and effect for six succeeding years from
the election, so that collections may be
made for the sixth year beginning in Octo-
ber, 1953, under the 80¢ rate?"

Section 9 of Article VIII of the Constitution
of Texas, as amended, provides the authority for a re-
allocation of constitutional taxes after a majority of
the qualified property tax paying voters of a county have
favored the same. Further, it is provided that "such re-
allocations and changes shall remain in force and effect
for a period of six (6) years from the date of the elec-
tion at which the same shall be approved, unless the same
again shall have been changed by a majority vote of the
qualified property tax paying voters of such county, vot-
ing on the proposition, after submission by the Commis-
sioners' Court at a general or special election for that
purpose." It necessarily follows that for a period of
six years from the date of the election the constitution-
al tax limits are those voted upon unless changed by a
majority vote of the qualified property tax paying voters
of Ellis County.

Inasmuch as the election for reallocation and
change in the ad valorem tax rate was held on August 23,
1947, the question for determination is whether Ellis
County may assess taxes on January 1, 1953, and collect
the same in October, 1953, pursuant to such election or
must the collection in October, 1953, be limited to the
old constitutional rate. Your factual situation reflects
that the six year period will run from August 23, 1947,
to August 22, 1953.

In the case of Humble Oil & Refining Co. v.
State, 3 S.W. (2d) 559, the Court stated:

"Article 7151 of the Revised Statutes pro-
vides, in effect, that all property shall be
assessed against the person who owned same on
January 1st in the year for which same is ren-
dered, and our courts have uniformly held that
the person who owns property on the 1st of
January is personally liable for the taxes for
said year, although same may be sold shortly
thereafter. . . .

"Our statutes seem to be somewhat in con-
fusion with reference to the time when the

value of property shall be ascertained in fixing the rendition. Article 7174 requires each tract or lot of land to be valued by itself as same may 'be fairly worth in money at the time such assessment is made.' Article 7211 provides that, if the tax assessor is not satisfied with the value placed thereon by the owner, the assessor shall value same, and shall value it at 'the reasonable cash market value of such property at the time of its rendition.' Article 7212 of the Revised Statutes provides that the board of equalization of the county shall supervise the assessments, and, if in their judgment the assessments have not been rendered correctly, that they may make such corrections as in their judgment are proper. Article 7214 of the Revised Statutes provides that the tax assessor, before he enters upon his duties, shall take an oath that he will inspect the property, and will assess same at its market value as of January 1st preceding the assessment. Article 7151 of the Revised Statutes provides that the owner of the property, on January 1st, shall render the same for taxes, and that same shall be rendered between January 1st and April 30th of each year. It thus appears that, under articles 7174 and 7211, the property when rendered shall be valued as at the time of the assessment, and, under article 7214, the assessor is required by his oath to value it as of January 1st.

". . . As above stated, under the decisions of our courts, the owner of the property on January 1st is responsible for the taxes for the ensuing year."

In the case of C. B. Carswell & Co. v. Habberzettle, 87 S.W. 911, the Court stated:

"The court erred in sustaining appellee's exceptions, and striking out the amount of penalties sought to be recovered by appellants. All property owned by a person in this state on the 1st day of January must be listed for taxation between that date and June 1st of each year; and, notwithstanding

the taxes do not become due until the 1st
day of October following, he is personally
liable for the taxes of that year, though
he sells the property before the amount of
such taxes has been ascertained, and be-
fore the payment thereof becomes due."

Article 7045, V.C.S., is as follows:

"The commissioners courts of the sev-
eral counties, all the members thereof being
present, at either a regular or special ses-
sion, may at any time after the tax assessors
of their respective counties have forwarded to
the Comptroller the said certificate and prior
to the time when the tax collector of such
county shall have begun to make out his re-
ceipts, calculate the rate and adjust the
taxes levied in their respective counties for
general purposes to the taxable values shown
by the assessment rolls."

A fundamental canon of constitutional construc-
tion is that the conditions existing at the time of the
adoption of a constitutional amendment may and should be
looked to for the purpose of determining the intent of
the amendment. Evidently, the will of the people was ex-
pressed and it was reasonably understood at the time of
adoption of the change in the tax rate that it should
continue for six years from the date of the election. The
six year period would automatically be suspended on August
22, 1953, but if the liability for the tax in the year
1953 is fixed before the time limit expires, it is the
opinion of this Department that the same may be collected
in October, 1953. The person owning property on January
1st is responsible for the taxes for the ensuing year.
The Commissioners' Court may calculate the rate prior to
the time the tax collector begins to make out receipts and
after the tax assessor has forwarded his certificate to
the Comptroller. Therefore, if the rate is fixed by the
Commissioners' Court before August 22, 1953, for the year
1953, the liability becomes fixed and the collection in
October, 1953, would be for a fixed tax due and owing
within the six year constitutional period. Further, to
say that the year 1952 is the last year Ellis County may
collect this tax would be an arbitrary determination that
the six year rate was not in effect in 1953. The con-
struction placed upon that part of Section 9, Article
VIII of the Constitution by this Department, relating to

"six years from the date of the election", is that the Constitution meant six taxable years, provided all requirements for a valid assessment and levy have been met within the year in which the "six year period" terminates. It necessarily follows, in answer to your question, that Ellis County may collect the 80¢ tax rate in October, 1953, if the same is validly assessed and levied.

Your brief furnished this office was helpful and appreciated.

## SUMMARY

The tax rate voted by Ellis County pursuant to Section 9, Article VIII, of the Constitution of Texas, may be collected in October, 1953, despite the termination of the constitutional six year period in August, 1953, provided a valid assessment and a levy are made prior to such termination; the collection of the tax for 1953 is contingent upon the assessment and levy in 1953 before August 22, 1953.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Burnell Waldrep
    Burnell Waldrep
    Assistant

BW:djm:jrb

APPROVED:

/s/ Fagan Dickson
    Fagan Dickson
FIRST ASSISTANT
ATTORNEY GENERAL